In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-2128

BRIAN ASHER, *et al.*,

*Plaintiffs*,

*v.*

BAXTER INTERNATIONAL INCORPORATED, *et al.*,

*Defendants-Appellees*.

APPEAL OF:

CITY OF FAYETTEVILLE FIREMEN'S PENSION
AND RELIEF FUND

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 C 5608—**Blanche M. Manning**, *Judge*.

SUBMITTED SEPTEMBER 26, 2007—DECIDED OCTOBER 17, 2007

Before EASTERBROOK, *Chief Judge*, and MANION and
ROVNER, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. More than three years ago
we held that the complaint in these six consolidated
securities actions could not be summarily dismissed under
the safe harbor, 15 U.S.C. §78u–5(c), created by the
Private Securities Litigation Reform Act of 1995 for
forecasts and other forward-looking statements. *Asher v.*

*Baxter International Inc.*, 377 F.3d 727 (7th Cir. 2004). We expected that discovery sufficient to make a prompt decision about the safe harbor would follow our opinion, for the safe harbor is supposed to be applied at an early stage. What happened instead was extended wrangling about who should be the "lead plaintiff" under the 1995 Act, and thus which law firm would control the plaintiffs' side of the litigation. See 15 U.S.C. §78u–4(a)(3).

"Lead plaintiffs" are supposed to counteract the dominance of lawyers over class-action suits; the district judge should select a representative with a financial stake large enough to make monitoring of counsel worthwhile, and with the time and skills needed to make monitoring productive. The idea is that securities suits then will proceed in the interest of investors rather than the lawyers who appoint themselves to prosecute these actions. In this case, however, the district court eventually held that none of the persons proposed as lead plaintiffs is satisfactory and that the suit therefore cannot proceed as a class action. A motions panel authorized an interlocutory appeal under Fed. R. Civ. P. 23(f).

The principal substantive questions on appeal are (a) whether the City of Fayetteville Firemen's Pension and Relief Fund ("the Fund") is unsuitable as a lead plaintiff because it learned about Baxter International's supposed wrongs from a securities lawyer rather than from a business executive, and (b) whether "no one" can be the answer to the question "who is the best representative of investors"? Perhaps, when all potential lead plaintiffs have shortcomings, the district judge must choose the least bad of a mediocre lot; after all, the 1995 statute refers to "the most adequate plaintiff" among many, without setting a floor. Minimum standards of adequacy are the domain of Fed. R. Civ. P. 23(a)(4), which permits a class action only if "the representative parties will fairly and adequately protect the interests of the class." In

this case, though, the district court never asked whether the Fayetteville Pension Fund would be adequate under Rule 23(a)(4)—or for that matter whether its financial interest is great enough to make it an appropriate champion under §78u–4(a)(3)(B)(iii).

We may consider these issues, however, only if the appeal is timely, and Baxter insists that it is more than a year late. The district court denied a motion for class certification in November 2005 after concluding that James and Heidi Hill, who had been selected as lead plaintiffs in 2002, had misrepresented their ownership of Baxter's stock. Their motion for selection said that they owned 2,663 shares; discovery revealed that they owned only 2.663 shares. (Their lawyer, who has since been indicted for fraud in conducting other class-action suits, called the misrepresentation an "administrative error.") The Hills also disclosed that they had not sought lead-plaintiffs status (they thought the form they returned was an application to share in any recovery) and had never attempted to monitor counsel's work on behalf of the class.

Instead of seeking to pursue an interlocutory appeal under Rule 23(f), counsel proposed two other lead plaintiffs. Cauley Bowman Carney & Williams PLLC proposed Tommy Newman, who had purchased 900 shares, and Milberg Weiss LLP (as it is now known) proposed Elizabeth G. Sherry, who owned 300 shares of Baxter's stock. Discovery revealed that neither Newman nor Sherry wants to supervise the work of counsel in a complex securities case, or would be good at that task. Newman had been recruited by the law firm and, the district judge determined, is its tool; Sherry, like the Hills, had returned a form thinking it essential to receive any recovery and had no desire to play an active role. The district court concluded that both Newman and Sherry would be "totally inadequate" as class representative

and in September 2006 denied a renewed motion to certify a class.

Once again no appeal was taken; once again counsel proposed new candidates for lead plaintiff. Cauley Bowman proposed the City of Fayetteville Firemen's Pension and Relief Fund, which purchased 600 shares during the time when Baxter's price was said to have been artificially high, and the law firm now known as Coughlin Stoia Geller Rudman & Robbins LLP proposed the Alaska Laborers Employers Retirement Fund, which bought 10,500 shares during that window. The district court deemed both the Alaska and the Fayetteville funds inadequate because their investments are much smaller than those of other mutual or pension funds. One can't help thinking that the unwillingness of any substantial shareholder to step forward as a representative suggests that the suit may not be in investors' interest. To the district judge, the fact that two modestly sized pools with modest stakes in Baxter had been recruited by the lawyers already trying to represent a plaintiff class implied that they would be subservient to counsel. This ruling was made in January 2007.

At this point the Fund asked the judge to deny its own motion for class certification—not because the Fund had decided to support Baxter, but to set up the possibility of interlocutory appeal. Evidently the judge, having already twice denied a motion to certify a class of investors, had not seen a reason to enter a third such order; the judge had thought it sufficient to rebuff another attempt to designate lead plaintiffs. But Rule 23(f) does not allow interlocutory appeals from orders designating (or not designating) lead plaintiffs—and although 28 U.S.C. §1292(b) could in principle allow an interlocutory appeal from such an order with the approval of both the district court and this court, the Fund did not ask for permission to appeal under §1292(b). On March 29, 2007,

the district judge granted the Fund's motion to deny its own motion for class certification, and an application for leave to appeal under Rule 23(f) was made and granted.

Rule 23(f) says: "A court of appeals may in its discretion permit an appeal from an order of a district court granting or denying class action certification under this rule if application is made to it within ten days after entry of the order." Baxter maintains that the 10 days expired in November 2005, when the district court first denied a motion for class certification. The Fund replies that each new "order of a district court granting or denying class action certification" starts a new 10-day period. (The Fund also argues that the decision of this court's motions panel not to dismiss the application as untimely is conclusive, but that's a makeweight. The motions panel did not hold that the appeal is timely; it simply denied the motion to dismiss. This allowed briefing to proceed, so that the question could be resolved after a full adversarial presentation. A one-line order denying a motion to dismiss does not block full consideration by the merits panel.)

This circuit has held that the 10 days under Rule 23(f) cannot be extended by making another motion for class certification. See *Gary v. Sheahan*, 188 F.3d 891, 893 (7th Cir. 1999). Cf. *Blair v. Equifax Check Services, Inc.*, 181 F.3d 832, 837 (7th Cir. 1999) (a timely motion for reconsideration of the original order granting or denying class certification extends the period for appeal, but an untimely or successive motion does not). Other circuits have come to the same conclusion. E.g., *Carpenter v. Boeing Co.*, 456 F.3d 1183 (10th Cir. 2006); *Jenkins v. BellSouth Corp.*, 491 F.3d 1288 (11th Cir. 2007). The time limit would not be worth anything if it restarted with each new motion. Then the rule might as well say "at any time" instead of "within ten days". A short limit would be turned into an indefinite one. Rule 23(f) sets a

brief limit because the appeal is interlocutory; if the disposition is not reversed swiftly, the case should proceed in the district court. Arguments pro and con about class certification then can be made on appeal from the final decision. There's no reason to drag out the prospect of interlocutory review when a new window of appellate review will open once a final decision has been reached.

According to the Fund, however, this presumes that there was only one decision in the district court. The Fund allows that successive motions for the same relief do not reopen the time for appeal. But here, as the Fund sees things, there have been three distinct decisions: first whether a class could be certified with the Hills as lead plaintiffs, second whether a class could be certified with Newman and Sherry as lead plaintiffs, and third whether a class could be certified with itself as lead plaintiff. Doubtless the motions were different enough that the district court could not have invoked the law of the case to reject any of them. But the ability to extend the debate about certification in the district court does not mean that the window of opportunity for appellate review must be open indefinitely. The longer this process takes in the district court, the less appropriate is interlocutory review that will prolong the litigation even further.

*Behrens v. Pelletier*, 516 U.S. 299 (1996), holds that defendants may have more than one chance to take an interlocutory appeal to argue for official immunity. The reason for that decision—that each order rejecting an immunity defense is independently "final" under 28 U.S.C. §1291 as that term was understood in *Mitchell v. Forsyth*, 472 U.S. 511 (1985)—does not carry over to appeals under Rule 23(f). As we stressed in *Fairley v. Fermaint*, 482 F.3d 897 (7th Cir. 2007), *Behrens* and *Mitchell* allow appeals without regard to the district court's reasons; it is enough that a given order prolongs the litigation and thus (further) impinges on a defendant's

potential right not to be sued. Rule 23(f) does not create a right not to be sued, or for that matter a right to interlocutory appeal. It creates a (brief) opportunity for expedited review, and if that opportunity passes the entitlement to review at the end of the case remains.

Still, the Fund insists, the fact that the district judge made three decisions denying class certification shows that the first and second were not "definitive," and that the time to appeal did not begin until the third decision. Yet no interlocutory decision is "definitive"; classes may be certified, modified, or decertified as the case progresses. The Fund's approach would allow lengthy deferral of appeal, and we would become embroiled in questions such as whether the district judge's ruling was tentative, definitive, or something in between; that would be a formula for paralysis. The Fund cannot get traction from its further argument that the district judge failed to supply "adequate legal analysis" for the first two decisions; that amounts to saying that the time for appeal does not begin until the judge has *cured* all errors! The thing being appealed is the order; a paucity of legal analysis may be a reason to reverse an order but is not a reason to pretend that the judge never entered an order.

Having said all of this, we recognize that a district court could keep open the prospect of interlocutory review under Rule 23(f) by denying one class member's motion for appointment as lead counsel and inviting a new motion from some other member, all the while leaving the motion for class certification undecided. Only after running through all potential lead plaintiffs would the district judge act on the motion to certify a class—and an appeal within 10 days then could bring up the decisions about lead-plaintiff status. (Baxter is wrong to think that an appeal under Rule 23(f) does not present antecedent questions such as lead-plaintiff dispositions. Any appeal presents *the order* for appellate decision, and a

court of appeals is free to address all considerations that make the order sound or erroneous. See *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 204–05 (1996).)

As it happens, however, the district judge did not proceed that way—at least not the first two times. The court denied lead-plaintiff status to the Hills and entered a contemporaneous order denying a motion for class certification, repeating that pattern with Newman and Sherry. Only when it denied the third set of applications for lead-plaintiff status did the district court leave the class question open. Perhaps class counsel missed the boat by not asking our leave to appeal from the first decision, not on the ground that the Hills should have been selected as lead plaintiffs, but on the ground that rejecting one potential lead plaintiff does not warrant an immediate denial of class certification. The opportunity to make such an argument passed by in November 2005, however, and cannot be reopened now. Prudently or not, the district court declined to certify this suit as a class action in November 2005, and prudently or not no one invoked Rule 23(f) at the time. That ended the opportunity for interlocutory review under Rule 23(f), leaving §1292(b) and an appeal from a final decision. The Fund did not request certification of the January 2007 lead-plaintiff decision under §1292(b), and it is too late to do this now. But appeal from a final decision remains possible.

Waiting for a final decision will expose class counsel to additional financial risks. Without a certified class, the case has lower settlement value, and if counsel litigates to final decision on the merits Baxter may well prevail, and then there would be no point in arguing for class certification. But the difficulties in pursuing a suit to a final decision do not justify taking liberties with Rule 23(f). The final-decision rule of §1291 is the norm, and Rule 23(f) is an exception that, like §1292(b), must be used sparingly lest interlocutory review increase the

time and expense required for litigation. Counsel representing the plaintiffs are in the business of litigating securities actions; they spread risk across a portfolio of suits and cannot demand that this court bend the rules to relieve them of risk voluntarily assumed in a particular case.

Both the judicial system and the investors gain from dispatch. Class actions are unwieldy and often dominated by lawyers. (That's a major reason why the lead-plaintiff statute was enacted.) Investors are poorly situated to protect their own interests, while lawyers are tempted to drag out the case to increase their fees (or, by fighting to have their clients named as lead plaintiffs, to engross larger portions of available fees). Judges should insist that these cases proceed to decision rather than linger on the docket. Preventing the window for Rule 23(f) review from remaining open for years (as the Fund proposes) promotes the public interest.

In concluding that the appeal comes too late, we have not needed to answer the question whether the 10-day limit in Rule 23(f) is "jurisdictional." *Bowles v. Russell*, 127 S. Ct. 2360 (2007), holds that statutory deadlines for appeal are jurisdictional, but read in conjunction with decisions such as *Eberhardt v. United States*, 546 U.S. 12 (2005), holds out the possibility that deadlines in the federal rules are just claim-processing norms. See also *Scarborough v. Ryan*, 541 U.S. 401 (2004); *Kontrick v. Ryan*, 540 U.S. 443 (2004). The 10-day limit in Rule 23(f) lacks a statutory counterpart. Rule 23(f) was adopted in 1998 as an exercise of the Supreme Court's power under 28 U.S.C. §1292(e) to authorize interlocutory appeals by promulgating rules under the Rules Enabling Act, 28 U.S.C. §2072. How much time litigants have to take interlocutory appeals is a question for the rulemaking process, which implies that the deadline is not juris-

dictional. See *Coco v. Belle Terre*, 448 F.3d 490, 491 (2d Cir. 2006).

But jurisdictional or not, the time limit is mandatory—which means that it must be enforced if the litigant that receives its benefit so insists. See *El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473 (1999). There will be time enough to choose between "jurisdictional" and "claim-processing norm" characterizations if, in some future case, the appellee either consents to a belated appeal or fails to object. Then the "jurisdictional" characterization would matter; today it does not, because Baxter has asked us to enforce the 10-day limit.

The appeal is dismissed as untimely.

A true Copy:

  Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—10-17-07