IN THE SUPREME COURT OF TEXAS









IN THE SUPREME COURT OF TEXAS

 

════════════

No. 07-0240

════════════

 

 

Miguel Hernandez, M.D., Petitioner,

 

v.

 

Julious Ebrom and Richard Hunnicutt, Respondents

 

════════════════════════════════════════════════════

On Petition for Review from
the

Court of Appeals for the Thirteenth District of Texas

════════════════════════════════════════════════════

 

Argued October 15, 2008

 

            Chief Justice Jefferson, joined by Justice
O’Neill and Justice Medina,
dissenting.

 

     The Court proposes a categorical rule: a health care provider
may challenge an order denying his motion to dismiss a claim due to the
inadequacy of an expert report either in an interlocutory appeal or after final
judgment. And then it proposes the opposite: a provider may not appeal
an order denying his motion to dismiss if the plaintiff establishes at trial
“the appropriate standard of care, breach of the standard, and a causal
relationship of the breach to the plaintiff’s damages.” ___
S.W.3d at ___. As to the first holding, the Court relies on the
statute’s plain language. Because “[n]either section 51.014(a)(9) nor section
74.351 indicate there are consequences if an appeal from the interlocutory
order is not pursued,” the Court reasons, a provider who elects not to appeal
the trial court’s order denying dismissal may complain after final judgment. Id. at ___. “When the Legislature has amended the
statute to prescribe certain time limits and procedures, it is not our
prerogative to add further limitations to them.” Id.
at ___.

            But
the Court adds a “further limitation” in the next breath: a provider loses his
statutory right to dismissal if the plaintiff prevails at trial. Id. at ___. In other words, “may appeal” means “must
appeal” in that instance. This transmutation depends not on the statute’s plain
language, but on the Court’s belief that an exception is required when the
plaintiff has secured a judgment establishing malpractice. The Court limits its
exception to judgments in which the plaintiff wins after a full trial; a successful
defendant could resurrect his complaint about the inadequate expert
report, and make the plaintiff pay his fees and costs, despite his failure to
avail himself of an interlocutory appeal when available. While the Court
recognizes that the Legislature’s goals were threefold—reducing frivolous
claims, preserving meritorious ones, and decreasing the cost of health care
litigation—its rule furthers none of them. The question this case presents
deserves more thoughtful consideration about the Legislature’s broader mission,
which must inform our construction of the right to an interlocutory appeal in
this context. See City of Marshall v. City of Uncertain, 206 S.W.3d 97,
105 (Tex. 2006) (“[O]ur primary objective is to
ascertain and give effect to the Legislature’s intent.”). Because the Court’s
holding contradicts that mission, I respectfully dissent.

            Interlocutory
appeals are disruptive, time-consuming, and expensive. See In re
Prudential Ins. Co. of Am., 148 S.W.3d 124, 138 (Tex. 2004) (noting “the
disruption and burden of interlocutory appeal”); 19 George C. Pratt, Moore’s Federal Practice § 201.10[1] (3d ed.
2009) (“The purposes of the final judgment rule are to avoid piecemeal
litigation, to promote judicial efficiency, and to defer to the decisions of
the trial court.”); 15A Charles Alan
Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice &
Procedure § 3907, at 269 (2d ed. 1992) (“When courts attempt to explain
the policies that underlie the final judgment rule, . . . [they] speak of
‘efficiency,’ protecting the role of the trial judge, and the need to avoid
such evils as interference with the trial court, deciding unnecessary issues,
and deliberate delay or harassment.”); cf. Fed. R. Civ. P. 23 advisory committee’s note (1998) (observing
that ten-day window for seeking interlocutory review in federal cases involving
class certification “is designed to reduce the risk that attempted appeals will
disrupt continuing proceedings”); In re McAllen Med. Ctr., Inc., 275
S.W.3d 458, 461 (Tex. 2008) (noting that “[a]ppellate
courts cannot afford to grant interlocutory review of every claim that a trial
court has made a pre-trial mistake”).

            There
are instances, however, when the Legislature deems a right or remedy so
important that its vindication need not wait until the case concludes. Examples
are strewn throughout Texas statutes1; the one at
issue today resides among several others in section 51.014 of the Civil
Practice and Remedies Code. Tex. Civ.
Prac. & Rem. Code § 51.014(a)(9). Section
51.014 uses the permissive term “may” in conferring the right to an
interlocutory appeal. Id. § 51.014(a). In the
Court’s view, that term governs the disposition in this case. Because the
defendant is not required to appeal an interlocutory order, he may
postpone his complaint until the ruling merges with a final judgment. This
approach is easy to understand but has obvious flaws.

            For
example, while the same plain language says that an order granting a temporary
injunction “may” be appealed, it must be appealed before final judgment
if the enjoined party wants relief. By its nature, a temporary injunction
ceases to exist when the trial court signs a final judgment. An order
appointing a receiver becomes the basis of commercial transactions with third
parties. If a challenge to that order “may” await the
final judgment years later, are those transactions dissolved when the receiver
is removed? A media defendant “may” immediately appeal the denial of its motion
for summary judgment. If it foregoes that right and loses at trial, can an
appellate court render a take-nothing judgment because the trial court
previously denied a motion for summary judgment that it should have granted?

            It
is not enough to say that because “may”—which applies to every appeal in
section 51.014(a)—is permissive, a party can always elect to appeal either
immediately or after final judgment. See Ray Malooly
Trust v. Juhl, 186 S.W.3d 568, 570 n.3 (Tex.
2006) (noting that “‘[in] dozens of cases, courts have held “may” to be
synonymous with “shall” or “must”’”) (quoting Black’s
Law Dictionary 1000 (8th ed. 2004)); see also Bocquet
v. Herring, 972 S.W.2d 19, 20 (Tex. 1998) (“Statutes providing that a party
‘may recover,’ ‘shall be awarded,’ or ‘is entitled to’ attorney fees are not
discretionary.”) (citations omitted). We must also
examine the nature of the claim and the right sought to be vindicated.
Efficiency, third-party interests, public policy, jurisdiction, a preference
for outcomes based on substance—these and other concerns have historically
informed the decision whether an interlocutory appeal is lost if not taken
immediately. The analysis can be straightforward in a given case, but it may
also require a deeper understanding of the purposes interlocutory review was
meant to serve. Whether an interlocutory appeal may await final judgment
depends on circumstances that evade the easy fix the Court applies today. We
should attempt to discern general principles that will govern future cases, and
then determine the scope of the appellate remedy with those principles in mind.

I

Background

 

            Until
2003, medical professionals had no right to an interlocutory appeal if a trial
court erroneously denied a motion to dismiss the case based on deficiencies in
the claimant’s expert report. See, e.g., Villafani v. Trejo, 251 S.W.3d 466, 468 (Tex.
2008). While some courts of appeals granted mandamus relief in that
circumstance, entitlement to it was by no means guaranteed. See
In re Woman’s Hosp. of Tex., Inc., 141 S.W.3d 144, 158 (Tex. 2004) (Owen,
J., concurring in part and dissenting in part to the denial of mandamus
petitions). This Court was ultimately persuaded that, with respect to
health care liability claims, public policy required that we reassess our
traditional reluctance to intervene in lower court proceedings. In re McAllen Med. Ctr., 275 S.W.3d at 466. The
Legislature spoke, in apocalyptic terms, about a “medical malpractice insurance
crisis” that had significantly reduced access to health care services and
dramatically increased the cost of malpractice insurance in this state. Act of
June 2, 2003, 78th Leg., R.S., ch. 204, § 10.11(a)(5), 2003 Tex. Gen. Laws 847, 884. Medical professionals
were subjected to jury trials in frivolous cases, which were “affecting the
availability and affordability of health care” and “driving physicians from
Texas and patients from medical care they need.” In re
McAllen Med. Ctr., 275 S.W.3d at 466. And so we recognized a right
to immediate mandamus relief when a trial court refuses to dismiss a case in
which the expert report is inadequate. Id. at 467.

            Our
holding in McAllen was reinforced by legislative action that was
similarly designed to accelerate dismissal of frivolous cases. Noting that “the
number of health care liability claims” had “increased . . . inordinately,” the
Legislature enacted section 74.351 and granted an accelerated appeal from an
order denying a motion to dismiss for failure to file an adequate report. Act
of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.11(a)(1), 2003 Tex. Gen. Laws 847, 884. This provision had one
goal in mind:

 

The obvious intent of this statutory provision was to
stop suits that had no merit from proceeding through the courts. The
Legislature’s hope was, and is, that this would reduce waste of the parties’,
the courts’, and the insurers’ time and money, which would favorably impact the
cost of insurance to health care providers and thus the cost and availability
of health care to patients.

 

In re Woman’s Hosp. of Tex., Inc., 141 S.W.3d at 147 (Owen, J.,
concurring in part and dissenting in part to the denial of mandamus petitions);
see also Act of June 2, 2003, 78th Leg., R.S., ch.
204, § 10.11(b)(1), (3), 2003 Tex. Gen. Laws 847, 884 (intent of legislation
was to “reduce excessive frequency and severity of health care liability claims
through reasonable improvements and modifications in the Texas insurance, tort,
and medical practice systems . . . in a manner that will not unduly restrict a
claimant’s rights any more than necessary to deal with the [medical liability
insurance] crisis”).

II

The interlocutory appeal was designed to remove
frivolous cases from the judicial system at the earliest opportunity.

 

            It
is clear, then, that when the Legislature gave health care providers authority
to appeal an interlocutory order that denies a motion to dismiss, it did so to
quickly dispose of frivolous cases that increase the cost of insurance and
drive doctors away from Texas. The question here is whether the Court’s holding
today furthers or frustrates that purpose. See Tex. Gov’t Code §
311.023 (providing that courts may consider “the object sought to be attained”
and the “consequences of a particular construction”).

            The
Court and I agree that “may,” as it applies to interlocutory appeals under
section 51.014(a)(9), “‘creates authority or grants
permission or a power.’” ___ S.W.3d at ___ (quoting Tex. Gov’t Code §
311.016(1)). If the claimant were proposing that a
defendant had no right to an interlocutory appeal, we would reject it
unanimously. The Court says its holding “would allow Hernandez to pursue a
right given him by the Legislature,” suggesting that the approach I favor would
not. To the contrary, the statute clearly permits a provider to pursue the
right if it so chooses. The question is not whether the defendant has the
right, but whether the statute contemplates its immediate exercise. Our
treatment of this issue must therefore be sensitive to the law’s underlying
rationale. Those reasons vary according to the nature of the interlocutory
appeals section 51.014 permits.

            As
the Court notes, the oldest interlocutory appeal, that from an order creating
or dissolving a temporary injunction, must either be taken immediately or lost,
because a temporary injunction, by its very nature, ceases to exist when the
controversy has proceeded to final judgment. See Janus
Films, Inc. v. City of Fort Worth, 358 S.W.2d 589, 589 (Tex. 1962) (“The
purpose of a temporary injunction is to preserve the status quo of the subject
matter of the suit pending a final trial of the case on its merits.”).
Accordingly, even though section 51.014 says a party “may appeal” a temporary
injunction, the opportunity to review that order is lost if not taken
immediately.

            Courts
of appeals have held that orders appointing receivers may be challenged by
interlocutory appeal only. Long v. Spencer, 137
S.W.3d 923, 926 (Tex. App.—Dallas 2004, no pet.) (holding
parties must challenge appointment of receiver by interlocutory appeal or
complaint is waived); Sclafani v. Sclafani, 870 S.W.2d 608, 611 (Tex. App.–Houston [1st
Dist.] 1993, writ denied); Benningfield v. Benningfield, 155 S.W.2d 827, 827 (Tex. Civ. App.—Austin 1941, no writ); McFarlane v. Greenameyer, 199 S.W. 304, 305 (Tex. Civ. App.—Galveston 1917, no writ). As one court explained:

 

[Permitting appeal from final judgment] would mean
that a party could rightfully attempt to set aside an order of receivership in
an appeal regardless of how long ago the receivership order was entered. The
setting aside of an order of receivership has “the effect of nullifying all
intervening acts of the receiver . . . or, at least, of raising serious
questions concerning the validity of such intervening acts.” Allowing the
vacation of a receivership at any time after its creation would work undue
hardship on third parties who have dealt in good faith with the receiver.
Furthermore, an unlimited time to appeal would mean that the order of
receivership would never be beyond challenge, and thus never attain the
finality upon which the parties, the receiver, and those who have transacted
with the receiver, are entitled to depend.

 

Sclafani, 870 S.W.2d at 611 (internal citation
omitted). Again,
section 51.014 says a party “may appeal” these orders, but courts recognize
that, in these circumstances, review cannot await final judgment. This is not
unlike the rule governing interlocutory appeals in probate proceedings, in which
“[t]he need to review ‘controlling, intermediate decisions before an error can
harm later phases of the proceeding’” justifies an exception to the “one final
judgment” rule. De Ayala v. Mackie, 193 S.W.3d 575, 578 (Tex. 2006)
(quoting Logan v. McDaniel, 21 S.W.3d 683, 688 (Tex. App.—Austin 2000,
pet. denied)).

            Similarly,
the right to complain of a trial court’s denial of a media defendant’s motion
for summary judgment on certain defamation claims may well be lost if not
challenged by interlocutory appeal, see Tex. Civ. Prac. & Rem. Code §
51.014(a)(6), as it is settled in both state and federal court that the denial
of a motion for summary judgment may not be challenged on appeal from final
judgment following trial, see Johnson v. Sawyer, 120 F.3d 1307, 1316
(5th Cir. 1997) (“We have held repeatedly that orders denying summary judgment
are not reviewable on appeal where final judgment adverse to the movant is rendered on the basis of a subsequent full trial
on the merits.”); Glaros v. H.H. Robertson Co.,
797 F.2d 1564, 1573 (Fed. Cir. 1986); Ackermann v. Vordenbaum,
403 S.W.2d 362, 365 (Tex. 1966) (holding that to allow an appeal of the denial
of a motion for summary judgment following a subsequent dismissal or full trial
on the merits “could result in judgments which would be patently unjust”). We
have noted that:

 

It would seem incongruous for a court, upon finding
that a judgment following a full and complete conventional trial should be
reversed because of the admission of improper evidence, to then review the
action of a trial court in overruling a summary judgment, particularly if it
appears from the evidence adduced upon the conventional trial that there were
genuine issues of fact in the case even though the summary judgment record might
not reflect this situation because of an incomplete development of the facts.

 

Id. at 365 (noting that many of the same concerns would
arise if the final judgment appealed from was one of dismissal). The Fifth
Circuit has explained the justification for this rule:

 

It makes no sense whatever to reverse a judgment on
the verdict where the trial evidence was sufficient merely because at summary
judgment it was not. As we noted in Woods v. Robb, 171 F.2d 539 (5th Cir.
1948): “The saving of time and expense is the purpose to be attained by a
summary judgment in a proper case. When in due course the final trial is had on
the merits it becomes the best test of the rights of the movant.
If he wins on trial he has his judgment. If he loses on a fair trial it shows
that he ought not to have any judgment.” Id. at 541.
For all of these reasons, we are firmly convinced that the better course is to
decline to review the district court’s denial of motions for summary judgment when
the case comes to us on the movant’s appeal following
adverse judgment after full trial on the merits.

 

Black v. J.I.
Case Co., 22 F.3d
568, 572 (5th Cir. 1994) (footnote omitted).

            By
contrast, cases involving jurisdictional matters generally follow a different
rule. We have implicitly concluded that the failure to pursue the interlocutory
appeal given to governmental entities whose immunity-based pleas to the
jurisdiction are denied does not prevent them from raising the same issue on appeal
from a final judgment. See, e.g., State ex rel. State Dep’t of Highways and Pub. Transp. v. Gonzalez, 82 S.W.3d 322, 331 (Tex. 2002)
(concluding, on appeal from final judgment, that governmental immunity barred
claim and rendering take-nothing judgment despite trial court’s interlocutory
denial of plea to the jurisdiction on that ground); Fed. Sign v. Tex. S.
Univ., 951 S.W.2d 401, 412 (Tex. 1997) (same); see also Tex. Civ. Prac. & Rem. Code §
51.014(a)(8).   This rule would presumably extend
to interlocutory orders involving the trial court’s personal jurisdiction over
a party. The prevailing view is that an order granting or denying a special
appearance may be challenged after final judgment. See
GJP, Inc. v. Ghosh, 251 S.W.3d 854, 866-67 (Tex. App.—Austin 2008, no pet.)
(holding that appellate jurisdiction to review special appearance rulings was
not limited solely to interlocutory appeal authorized by section 51.014(a)(7));
Canyon (Australia) Pty., Ltd. v. Maersk
Contractors, Pty., Ltd., No. 08-00-00248-CV, 2002 WL 997738, at *4 (Tex.
App.—El Paso May 16, 2002, pet. denied) (concluding that interlocutory appeal
was not “mandatory” and trial court’s special appearance grant could be
reviewed on appeal from final judgment); but see Matis
v. Golden, 228 S.W.3d 301, 305 (Tex. App.—Waco 2007, no pet.) (concluding
that challenge to order denying special appearance, raised for the first time
on appeal from final judgment, was untimely because parties failed to bring an
interlocutory appeal); see also Tex.
R. Civ. P. 120a(1) (providing for special
appearances to object to jurisdiction “over the person or property of the
defendant on the ground that such party or property is not amenable to process
issued by the courts of this State”).

            And
while we have not considered the issue, federal courts have concluded that a
party’s failure to seek interlocutory review of an order granting or denying
class certification does not bar the same complaint on final judgment. See,
e.g., Gutierrez v. Johnson & Johnson, 523 F.3d 187, 199 n.12 (3d Cir.
2008) (concluding that “plaintiffs may appeal the denial of class certification
once a final judgment has been entered”); Asher v. Baxter Int’l, Inc.,
505 F.3d 736, 740 (7th Cir. 2007) (noting that if Rule 23(f)’s brief opportunity
for interlocutory review passes, “the entitlement to review at the end of the
case remains”); Jenkins v. BellSouth Corp., 491 F.3d 1288, 1292 (11th
Cir. 2007); Carpenter v. Boeing Co., 456 F.3d 1183, 1192 (10th Cir.
2006); Gary v. Sheahan, 188 F.3d 891, 892 (7th
Cir. 1999); see also Compaq Computer Corp. v. Lapray,
135 S.W.3d 657, 664 n.6 (Tex. 2004) (noting that federal decisions and
authorities interpreting current federal class action requirements are
persuasive authority in Texas courts). The federal interlocutory review
provision was adopted to address countervailing concerns:

 

An order denying certification may confront the
plaintiff with a situation in which the only sure path to appellate review is
by proceeding to final judgment on the merits of an individual claim that,
standing alone, is far smaller than the costs of certification. An order
granting certification, on the other hand, may force a defendant to settle
rather than incur the costs of defending a class action and run the risk of
potentially ruinous liability. These concerns can be met at low cost by
establishing in the court of appeals a discretionary power to grant
interlocutory review in cases that show appeal-worthy certification issues.

 

Fed. R. Civ. P. 23 advisory committee’s
note (1998).2

III

An expert report is a means to determine quickly if
the claim has arguable merit.

 

            In
cases involving health care liability claims, the expert report serves as a
screening mechanism to weed out frivolous suits. The report is not admissible
in evidence; may not be used in a deposition, trial, or other proceeding; and
may not even be referred to by any party during the course of the action for
any purpose. Tex. Civ. Prac. & Rem. Code § 74.351(k).
If a trial court denies a provider’s motion to dismiss, the Legislature
authorized a narrow window of interlocutory review; once that review is
complete, parties know what, if anything, remains at
stake. Cf. Gary, 188 F.3d at 893 (discussing Fed.
R. Civ. P. 23(f) interlocutory review of orders
involving class certification and noting that it “permit[s] the parties to
proceed in confidence about the scope and stakes of the case thereafter”). Our
precedent contemplates an interlocutory resolution of these matters. See,
e.g., Leland v. Brandal, 257 S.W.3d 204, 205
(Tex. 2008) (holding that when elements of expert report are deficient, either
by trial court or on appeal, an appellate court may remand the case so that the
trial court can consider whether to grant a thirty-day extension to cure the
deficiency). The number of cases decided on interlocutory appeal—both affirming
and reversing a trial court’s refusal to dismiss—is testimony to the fact that
providers are utilizing this remedy and that it is working as intended.3
See id. at 210 (Brister, J., dissenting)
(noting that “a substantial part of the state’s appellate resources are already
being expended reviewing preliminary expert reports”).

            When
a claim lacking merit is immediately dismissed, and the claimant obliged to pay
attorney’s fees, future such claims are deterred. It is shortsighted, then, to
think that the Legislature was concerned only about particular cases. The
larger goal, revealed time and again in legislative findings and statutory
amendments, is to muster not only claimants and defendants, but also trial and
appellate courts, in a war against the crisis that ensues when the system
allows frivolous cases to fester. The motive to bring these cases to fruition
right away is lost if postponed until damage to the health care system has
already been realized.

            It
is no less myopic to presume that the Legislature built a one-way ratchet to
protect only the health care industry. The Legislature’s directive that the
civil justice system repel weak claims stands
alongside its insistence that malpractice be penalized. The issue is one of
incentives. The claimant is encouraged to bring only those claims that have
merit because not only will those found lacking be dismissed, but the claimant
and his attorney will be saddled with attorney’s fees and costs for bringing a meritless claim. Tex.
Civ. Prac. & Rem. Code § 74.351(b)(1). The
defendant has reason to seek dismissal the moment an expert report reveals its
deficiency, or risk the costs of trial and potential defeat at the hands of a
jury and judge.

 IV

The Court’s exception exposes the limit of a
categorical rule and undermines the Legislature’s requirement that a trial
court dismiss a case in which the report is inadequate.

 

            The
Court suggests that if the defendant foregoes an interlocutory appeal when it
would have succeeded, and the resulting trial establishes malpractice, the
defendant can no longer complain about the trial court’s failure to dismiss.
Why would that be the case? The statute says, without equivocation, that the
trial court “shall . . . dismiss[]” a valid challenge
to an inadequate report. Tex. Civ. Prac.
& Rem. Code §
74.351(b). Those words are as plain after a final judgment
as before. Under normal practice, an appellate court would reverse the trial
court’s judgment and “render the judgment that the lower court should have
rendered.” See Tex. R. App. P. 60.2(c).
The case, then, would be dismissed and the victim ordered to pay the tortious defendant.4 See, e.g.,
Jernigan v. Langley, 195 S.W.3d 91, 94 (Tex. 2006) (per curiam)
(dismissing with prejudice claims against physician due to inadequate report); Horizon/CMS
Healthcare Corp., Inc. v. Fischer, 111 S.W.3d 67, 68 (Tex. 2003) (same); Walker
v. Gutierrez, 111 S.W.3d 56, 66 (Tex. 2003) (same); Am. Transitional
Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d
873, 880 (Tex. 2001) (same).

            The
Court’s proposed answer to such a travesty—that the matter becomes “moot” when
the issue is tried or that the statute may be ignored as “unjust”—is
unpersuasive. ___ S.W.3d at ___; cf. Carrillo v. State, 480 S.W.2d 612,
618 (Tex. 1972) (holding that appeal of juvenile delinquency adjudication was
not moot, despite juvenile’s reaching majority during proceedings, as “juvenile
should have the right to be exonerated by appeal”). The statute imposes an
explicit penalty for non-compliant reports; there is no exception for cases in
which the claim’s merits are proved. The Court likens the situation to the
court-created rule that denials of summary judgment may not be challenged
following post-trial adverse judgments. See, e.g.,
Ackermann, 403 S.W.2d at 365. But that conflicts with the Court’s
earlier conclusion that inadequate reports may be contested after final
judgment because “section 74.351 [does not] indicate there are consequences if
an appeal from the interlocutory order is not pursued.” ___
S.W.3d at ___.

            If
the statute’s silence authorizes an appeal at any time, why would it be limited
only to challenges made before “a full trial [in which] the plaintiff
prevails”? And why would “trial on the merits” be the only exception to the
Court’s rule—wouldn’t a final summary judgment have the same effect? What if
the plaintiff wins at trial but loses on appeal? Would the Court’s exception
still apply? What if the claimant establishes some (though not conclusive)
evidence of breach, causation, and damages, demonstrating that the case has
arguable merit, but the jury nevertheless finds for the defendant? I presume
the Court would conclude the defendant is entitled to his fees and costs, as
its exception is conditioned on the claimant’s success at trial. If that is so,
then it matters little whether the claimant prosecutes a serious claim; the
trial court must dismiss even those cases, and make the claimant pay the
provider’s fees, if the defendant prevails.

V

Because the Legislature intended a quick dismissal of
frivolous claims and trial of meritorious claims, a defendant asserting a
report’s inadequacy must immediately appeal to preserve the right to dismissal.

 

            A
bright line rule that requires an immediate appeal is superior to the
alternative and consistent with the statute’s broader design. Give the
defendant a procedural means to test the legitimacy of the claim in the first
instance. If refuted by the trial court, give him an immediate appeal. Weak
claims will die and the defendant will be made whole; the system will avert the
crisis meritless claims impose on society because
others will be deterred. Even if the claim is good, the claimant will lose if
she proffers a report that masks its worth. And because the lawyer hired to
vindicate a good claim will know that half measures will not suffice, she will
devote greater resources at the initial stage. The defendant, for strategic
reasons (thinking the cost of appeal outweighs the risk of trial) or prudent
ones (assessing the report as sufficiently chronicling an actionable breach of
the standard of care)—still may elect to try the case, but would then be
limited to arguing the merits. This approach ensures that a meritorious case is
not unduly restricted, while preserving an argument on appeal that no or
insufficient evidence requires reversal.

VI

Conclusion

            Allowing
a defendant to challenge the expert report after final judgment, as the Court
does, injects an element of uncertainty into the case and risks turning this
screening mechanism into a trump card. It prolongs litigation in those cases in
which an expert report is clearly insufficient, contrary to the Legislature’s
intent. The exception the Court adopts amounts to a concession that, under some
circumstances, the interlocutory route must be followed or lost. But the
exception raises at least two concerns. First, as a matter of principle, the
exception is inconsistent with the reasoning underlying the Court’s general
rule. The statute requires speedy dismissal when the provider timely challenges
an inadequate report. Nowhere does the Act provide that the sanction disappears
when the claimant prevails. The injustice the Court attempts to evade is best addressed
by requiring that the provider immediately appeal a trial court’s refusal to
dismiss a case when the report is flawed. Second, the Court’s exception applies
only if the plaintiff prevails. There will be many instances in which the
claimant has amassed competent evidence of damages, caused by a breach of the
appropriate standard of care, and yet fails to persuade the trier
of fact by a preponderance of the evidence. If an exception is to apply, it
should encompass all cases in which the record demonstrates the claim’s
arguable validity, irrespective of the outcome.

            Because
the statutory goal is to quickly dispense with frivolous health care
litigation, I would hold that section 51.014(a)(9) authorizes a provider to
immediately appeal a trial court’s denial of relief under section 74.351(b),
and that his failure to do so forecloses a later complaint about the ruling.
Because the Court concludes otherwise, I respectfully dissent.

 

_________________________

Wallace B. Jefferson

Chief Justice

 

OPINION
DELIVERED:     July 3, 2009














[1] See, e.g., Tex. Civ. Prac. & Rem Code § 15.003(c)
(authorizing interlocutory appeal of venue rulings in certain cases involving
multiple plaintiffs and intervening plaintiffs); Id. § 26.051(b)
(permitting interlocutory appeal from denial of plea to jurisdiction in a class
action if state agency has exclusive or primary jurisdiction of action); Tex.
Fam. Code § 6.507
(recognizing interlocutory appeal for orders appointing receivers); Tex.
Health & Safety Code §
574.070 (authorizing accelerated appeal from order requiring court-ordered
mental health services).





[2] It is worth
noting, though, that class certification cases brought in Texas courts are
resolved primarily through interlocutory appeals, because certification is
often “the whole ball of wax.” Victor E. Schwartz, Mark A. Behrens & Leah Lorber, Tort Reform Past, Present and Future: Solving
Old Problems and Dealing with “New Style” Litigation, 27 Wm. Mitchell L. Rev. 237, 264 (2000)
(quoting Eddie Curran, Critics Blast Alabama Judges’ “Drive By” Rulings,
Mobile Reg., Dec. 28, 1999, at
9A).





[3] There are far
too many to comfortably cite, so I have collected only a sampling of some of
the cases decided in 2008. See, e.g., Young v. Pinto,
No. 09-08-299 CV, 2008 WL 4998346, at *8-9 (Tex. App.—Beaumont Nov. 26, 2008,
no pet.) (mem. op.) (affirming trial court’s denial of motion to dismiss); Azle Manor, Inc. v. Vaden,
No. 2-08-115-CV, 2008 WL 4831408, at *10 (Tex. App.—Fort Worth Nov. 6, 2008, no
pet.) (mem.op.) (affirming in part and reversing in
part trial court’s denial of motion to dismiss); Hendrick
Med. Ctr. v. Hewitt, No. 11-07-00333-CV, 2008 WL 4439843, at *11 (Tex.
App.—Eastland Oct. 2, 2008, no pet.) (mem.
op.) (reversing trial court’s judgment, rendering judgment dismissing claims,
and remanding for calculation of attorney’s fees, because trial court abused
its discretion in denying motion to dismiss); Reardon v. Nelson, No.
14-07-00263-CV, 2008 WL 4390689, at *7 (Tex. App.—Houston [14th Dist.] Sept. 30, 2008, no pet.) (mem. op.) (reversing trial
court’s order denying motion to dismiss and remanding for consideration of
whether to grant extension); Butters v. Noyola,
Nos. 13-07-00713-CV, 13-08-00184-CV, 13-08-00183-CV, 13-08-00038-CV,
13-07-00765-CV, 13-08-00203-CV, 2008 WL 3984168, at *7 (Tex. App.—Corpus
Christi Aug. 29, 2008, no pet.) (mem.
op.) (same); Heritage Gardens Healthcare Ctr. v.
Pearson, No. 05-07-00772-CV, 2008 WL 3984053, at *7 (Tex. App.—Dallas Aug.
29, 2008, no pet.) (mem.
op.) (affirming trial court’s denial of motion to dismiss); Rivera v. Loweree, 281 S.W.3d 515, 521 (Tex. App.—El Paso 2008,
pet. denied) (same); Troeger v. Myklebust, 274 S.W.3d 104, 105 (Tex. App.—Houston [14th
Dist.] 2008, pet. denied) (same); Wilson N. Jones Mem’l
Hosp. v. Ammons, 266 S.W.3d 51, 53 (Tex.
App.—Dallas 2008, pet. filed) (reversing trial court’s judgment, rendering
judgment dismissing claims, and remanding for calculation of attorney’s fees,
because trial court abused its discretion in denying motion to dismiss); Ctr.
for Neurological Disorders v. George, 261 S.W.3d 285, 296 (Tex. App.—Fort
Worth 2008, pet. denied) (affirming in part and reversing in part trial court’s
order denying motion to dismiss); Marvin v. Fithian,
No. 14-07-00996-CV, 2008 WL 2579824, at *6 (Tex. App.—Houston [14th Dist.] July 1, 2008, no pet.) (mem. op.) (affirming trial
court’s order denying motion to dismiss); Merritt v. Williamson, No.
01-08-00293-CV, 2008 WL 2548128, at *8 (Tex. App.—Houston [1st Dist.] June 26, 2008, no pet.) (mem. op.) (reversing trial
court’s order denying motion to dismiss, and remanding for consideration of
whether extension would be appropriate); Schmidt v. Dubose, 259 S.W.3d
213, 219 (Tex. App.—Beaumont 2008, no pet.) (holding
that trial court did not err in denying motion to dismiss); Woofter
v. Benitez, No. 01-06-01123-CV, 2008 WL 2466223, at *2 (Tex. App.—Houston
[1st Dist.] June 19, 2008, no pet.) (mem. op.) (reversing
trial court’s order denying motion to dismiss and remanding for consideration
of extension request); Eikenhorst v. Wellbrock, No. 01-07-00459-CV, 2008 WL 2339735, at *11
(Tex. App.—Houston [1st Dist.] June 5, 2008, no pet.)
(mem. op.) (affirming trial court’s order denying motion to dismiss); Springer
v. Johnson, 280 S.W.3d 322, 334 (Tex. App.—Amarillo 2008, no pet.) (same); San Jacinto Methodist Hosp. v. Bennett, 256
S.W.3d 806, 819 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (affirming trial court’s order denying motion to dismiss); Educare Cmty. Living
Corp. v. Rice, No. 05-07-00964-CV, 2008 WL 2190988, at *3-4 (Tex.
App.—Dallas May 28, 2008, no pet.) (mem.
op.) (reversing trial court’s order denying motion to
dismiss and remanding for consider of extension); Arboretum Nursing &
Rehab. Ctr. of Winnie, Inc. v. Isaacks, No. 14-07-00895-CV, 2008 WL 2130446, at *8 (Tex. App.—Houston [14th
Dist.] May 22, 2008, no pet.) (mem. op.) (affirming
trial court’s denial of motion to dismiss); Bogar
v. Esparza, 257 S.W.3d 354, 373 (Tex. App.—Austin 2008, no pet.) (reversing
trial court’s judgment, rendering judgment dismissing claims, and remanding for
calculation of attorney’s fees, because trial court abused its discretion in
denying motion to dismiss); Pallares v. Magic
Valley Elec. Coop, Inc., 267 S.W.3d 67, 75 (Tex. App.—Corpus Christi 2008,
pet. denied) (affirming trial court’s order denying motion to dismiss); Rivenes v. Holden, 257 S.W.3d 332, 341 (Tex.
App.—Houston [14th Dist.] 2008, pet. denied) (reversing trial court’s judgment,
rendering judgment dismissing claims, and remanding for calculation of
attorney’s fees, because trial court abused its discretion in denying motion to
dismiss); Maris v. Hendricks, 262
S.W.3d 379, 387 (Tex. App.—Fort Worth 2008, pet. denied) (affirming trial
court’s order denying motion to dismiss); Tamtam
v. Waiters, No. 04-07-00398-CV, 2008 WL 1882784, at *5 (Tex. App.—San
Antonio Apr. 30, 2008, no pet.) (mem.
op.) (same); IHS Acquisition No. 140, Inc. v.
Travis, No. 13-07-481-CV, 2008 WL 1822780, at *9 (Tex. App.—Corpus Christi
Apr. 24, 2008, pet. denied) (mem. op.) (same); Victoria
Gardens of Frisco v. Walrath, 257 S.W.3d 284, 286
(Tex. App.—Dallas 2008, pet. denied) (reversing trial court’s judgment and
dismissing claims with prejudice); Greenberg v. Gillen, 257 S.W.3d 281,
282 (Tex. App.—Dallas 2008, pet. dism’d) (concluding
that trial court abused its discretion in denying motion to dismiss); Univ.
of Tex. Med. Branch v. Railsback, 259 S.W.3d 860,
870 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (affirming in part and
reversing in part trial court’s order denying motion to dismiss); CHCA
Mainland, L.P. v. Wheeler, No. 09-07-634 CV, 2008 WL 960798, at *5 (Tex.
App.—Beaumont Apr. 10, 2008, no pet.) (mem.
op.) (affirming trial court’s denial of motion to dismiss); Jones v. King,
255 S.W.3d 156, 161 (Tex. App.—San Antonio 2008, pet. denied) (reversing trial
court’s judgment, rendering judgment dismissing claims, and remanding for
calculation of attorney’s fees, because trial court abused its discretion in
denying motion to dismiss).





[4] The statute
entitles a doctor who successfully challenges a claimant’s expert report to
attorney’s fees, but the Court’s holding does not address what attorney’s fees
are recoverable—could the physician recover only those fees incurred until the
expert report was challenged or all fees incurred before final judgment? See
Tex. Civ. Prac. &
Rem. Code § 74.351(b).