PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3539
_____

DR. KAREN MALLEUS,

Appellant

v.

DR. JOHN J. GEORGE, in his individual capacity;
DR. JILL M. HACKMAN, in her individual capacity;
DR. JEFFREY A. CONRAD, in his individual capacity;
INTELLIGENCER JOURNAL/LANCASTER,
New Era Editor DOE;
SUNDAY NEWS EDITOR DOE;
LANCASTER NEWSPAPERS, INC.;
CINDY STAUFFER
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 5-10-cv-01357)
District Judge:  Honorable Juan R. Sánchez
_____

Argued April 15, 2011
Before:  FISHER, JORDAN and COWEN, *Circuit Judges*.

(Filed: May 26, 2011)

Andrea C. Farney
Sharon R. Lopez (Argued)
Triquetra Law
35 East Orange Street, Suite 301
Lancaster, PA 17602
        *Counsel for Appellant*

Paul J. Cianci (Argued)
Michael I. Levin
Levin Legal Group
1800 Byberry Road
1301 Masons Mill Business Park
Huntingdon Valley, PA 19006
        *Counsel for Appellees, Dr. John J. George*
        *and Dr. Jill M. Hackman*

Leonard G. Brown (Argued)
Clymer, Musser, Brown & Conrad
408 West Chestnut Street
Lancaster, PA 17603
        *Counsel for Appellee,*
        *Dr. Jeffrey A. Conrad*

_____

OPINION OF THE COURT
_____

2

FISHER, *Circuit Judge*.

Appellant Dr. Karen Malleus appeals the final order of the United States District Court for the Eastern District of Pennsylvania granting John J. George, Jill M. Hackman, and Jeffrey A. Conrad's motion to dismiss Malleus's 42 U.S.C. § 1983 claim that they violated her Fourteenth Amendment privacy rights. For the reasons discussed below, we will affirm.

I.

Malleus was a school board member for the Warwick School District. George and Hackman were also members of the school board. Conrad was the head of the Warwick Republican Party, and later a candidate for the school board.

In 2006, a student within the Warwick School District ("Reporting Student") reported that she had seen a teacher ("Teacher") hugging a minor student ("Minor Student"). Immediately after witnessing the incident, the Reporting Student told her substitute teacher about it. That evening the Reporting Student explained to her parents what she had seen. They then had her call her great-aunt, Malleus. Over the next few days, the Reporting Student and her parents met with various school administrators. The school and school district subsequently conducted an investigation into the Reporting Student's claim.

During the subsequent investigation Malleus shared credibility concerns about the Reporting Student, volunteering advice to various administrators that they should

3

have more evidence before disciplining the Teacher based on the account given by the Reporting Student. She raised these concerns with other members of the school board, the school's administration, and the school's faculty. Malleus did so because the allegations against the Teacher were serious, and she questioned the accuracy of those allegations. The investigation into the incident ended when the Teacher and the Minor Student denied the allegations. The Teacher received a warning that the allegations were serious and that, had they been true, the Teacher would have been terminated.

In 2008, a police officer encountered the Minor Student and the Teacher engaging in sexual activity. The Teacher was arrested. Subsequently, the school board conducted its own investigation into the 2006 incident.

Malleus agreed to cooperate with the investigation because the attorney conducting the investigation told her that the report would remain confidential, and the school board expressed that the report would be confidential. In an interview, she repeated her opinion that the Reporting Student has a vivid imagination and a history of exaggerating her conclusions about others' conduct.

The final report detailed Malleus's interjection into the 2006 investigation. Malleus viewed the report as unfair, and she was upset with its conclusions; however, she believed it would remain confidential.

In the run up to the 2008 school board election, George and Hackman leaked a copy of the report to Conrad, who subsequently provided it to the press. Local papers released

4

articles based on the report. Malleus alleges that these articles caused reputational harm, family problems, loss of emotional peace of mind, and loss of income.

Malleus filed a § 1983 claim against George, Hackman, and Conrad for violating her right to privacy. She claimed to have had a constitutionally protected expectation of privacy in the report under the Fourteenth Amendment because she had revealed her opinion about her grand-niece for a limited purpose and with the expectation that it would be kept secret. The District Court dismissed the complaint under Fed. R. Civ. P. 12(b)(6), ruling it failed to state a claim because the Fourteenth Amendment does not protect that type of communication.

Malleus filed a timely notice of appeal.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291.

Malleus argues that the District Court erred in dismissing her § 1983 claim. The District Court held that Malleus failed to plead that a right secured by the Constitution had been violated. *See Barna v. City of Perth Amboy*, 42 F.3d 809, 815 (3d Cir. 1994). Malleus argues that her Fourteenth Amendment right to privacy was violated when her opinion about her grand-niece's truthfulness was disclosed by George, Hackman, and Conrad.

5

We exercise plenary review over a district court's grant of a motion to dismiss. *AT&T v. JMC Telecom, LLC*, 470 F.3d 525, 530 (3d Cir. 2006). When reviewing a motion to dismiss, "[a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992). A motion to dismiss should be granted if the plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1947 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

6

III.

For a plaintiff to recover under § 1983, she must establish that the defendant acted under color of state law to deprive the plaintiff of a right secured by the Constitution. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Barna*, 42 F.3d at 815. The right that Malleus claims is protected by the Constitution is the right to share one's opinion about other individuals privately. For purposes of *Twombly* analysis, we must first establish that this is a right secured by the Constitution; if there is no constitutional right, it does not matter what facts have been provided as there can be no § 1983 claim.

Generally, Fourteenth Amendment constitutional privacy is limited to information about oneself. To the extent that the right applies to information about others, it is limited to one's decision not to share that information.

> To begin with, both the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person. In an organized society, there are few facts that are not at one time or another divulged to another. Thus the extent of the protection accorded a privacy right at common law rested in part on the degree of dissemination of the allegedly private fact and the extent to which the passage of time rendered it private. According to Webster's initial definition, information may be classified as "private" if it is "intended for or restricted to the

7

use of a particular person or group or class of persons: not freely available to the public."

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 764-65 (1989) (footnotes omitted).

Traditionally, the Fourteenth Amendment has protected two types of privacy rights.  *Whalen v. Roe*, 429 U.S. 589, 599-600 (1977); *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 178 (3d Cir. 2005).  First, it protects "the individual interest in avoiding disclosure of personal matters."  *Hedges v. Musco*, 204 F.3d 109, 121 (3d Cir. 2000) (internal quotation marks and citation omitted).  This category protects against disclosure of certain personal information, including:  information containing specific "details of one's personal life," *id.* at 121; *Scheetz v. The Morning Call, Inc.*, 946 F.2d 202, 208 (3d Cir. 1991), information "which the individual is ordinarily entitled to retain within the private enclave where he may lead a private life," and information containing "intimate facts of a personal nature."  *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 577 (3d Cir. 1980) (internal quotation marks and citation in footnote omitted).  Second, it protects "the interest in independence in making certain kinds of important decisions."  *C.N.*, 430 F.3d at 178 (quoting *Whalen* 429 U.S. at 599).  This category of "important decisions" has not been extended beyond "matters relating to marriage, procreation, contraception, family relationships, and child rearing and education." *Westinghouse*, 638 F.3d at 577 (quoting *Paul v. Davis*, 424 U.S. 693, 713 (1976)).  The first category is a right to confidentiality, and the second category is a right to autonomy.  *See Doe v. Delie*, 257 F.3d 309, 317 n.5 (3d Cir.

8

2001). As it is unclear which category of privacy Malleus is claiming, we will analyze her claim under both prongs.

This first type of privacy right is the right recognized in Justice Brandeis's dissent in *Olmstead v. United States*, "the right to be let alone." 277 U.S. 438, 478 (1928). "[T]he right not to have intimate facts concerning one's life disclosed without one's consent" is "a venerable [right] whose constitutional significance we have recognized in the past." *Bartnicki v. Vopper*, 200 F.3d 109, 122 (3d Cir. 1999) (citing *Paul P. v. Verniero*, 170 F.3d 396, 401-02 (3d Cir. 1999)). "In determining whether information is entitled to privacy protection, we have looked at whether it is within an individual's reasonable expectations of confidentiality. The more intimate or personal the information, the more justified is the expectation that it will not be subject to public scrutiny." *Fraternal Order of Police v. City of Philadelphia*, 812 F.2d 105, 112-13 (3d Cir. 1987) ("*FOP*"). We have deemed the following types of information to be protected: a private employee's medical information when sought by the government, *Westinghouse*, 638 F.2d at 577; medical, financial and behavioral information relevant to a police investigator's ability to work in dangerous and stressful situations, *FOP*, 812 F.2d at 113, 115-16; a public employee's medical prescription record, *Doe v. Southeastern Pennsylvania Trans. Auth.*, 72 F.3d 1133, 1138 (3d Cir. 1995) ("*SEPTA*"); a minor student's pregnancy status, *Gruenke v. Seip*, 225 F.3d 290, 301 (3d Cir. 2000); sexual orientation, *Sterling v. Borough of Minersville*, 232 F.3d 190, 196 (3d Cir. 2000); and an inmate's HIV-positive status, *Delie*, 257 F.3d at 317, 323. This information consists of three categories:

9

sexual information, *Sterling*, 232 F.3d at 196, medical information, *SEPTA*, 72 F.3d at 1139, and some financial information, *Paul P.*, 170 F.3d at 402. While this is not an exhaustive list, it is clear that the privacy right is limited to facts and an individual's interest in not disclosing those facts about himself or herself. It is the right to refrain from sharing intimate facts about oneself.

The information for which Malleus is claiming a privacy right meets none of these criteria. She may not have intended wide-dissemination of her opinion but she volunteered it to others, including the attorney who drafted the "confidential" report. The information was voluntarily shared, non-intimate (it was not relating to sexuality, medical records, or financial information), an opinion rather than fact, and about someone else. Malleus lacks a constitutional right to privacy under the first category.

The second type of privacy right is the right to autonomy and independence in personal decision-making. Cases in this category describe the liberty interests in matters relating to marriage, procreation, contraception, family relationships, and parental child rearing and education decisions. *See*, *e.g.*, *Troxel v. Granville*, 530 U.S. 57 (2000) (parents' rights to make decisions concerning care and custody of children); *Roe v. Wade*, 410 U.S. 113 (1973) (right to abortion); *Loving v. Virginia*, 388 U.S. 1 (1967) (freedom to marry); *Griswold v. Connecticut*, 381 U.S. 479 (1965) (right to marital privacy in use of contraceptives); *Pierce v. Society of Sisters*, 268 U.S. 510 (1925) (parents' right to teach own children); *Meyer v. Nebraska*, 262 U.S. 390 (1923) (right to teach foreign language).

10

The decision of a school board member to participate in an investigation into how a sexual assault investigation had been handled, while an important matter, does not implicate the kinds of interests recognized by the foregoing cases. The decision of an individual, in either her role as a school board member or in her role as a great-aunt, to share her opinion cannot be compared to the fundamental and life altering decisions where courts have recognized a privacy right for independent personal decision-making.

As Malleus has no claim under either of the recognized tests for Fourteenth Amendment privacy, she argues instead for a third, unrecognized type of privacy. She argues that if someone shares his or her opinion about someone else, with the expectation that that opinion will be kept secret, then the opinion must be kept confidential. We have not previously recognized a third category of Fourteenth Amendment privacy, and we decline to do so now.[1]

Courts have explained how limited the privacy right is.

> [T]he federal constitution . . . protects against public disclosure only [of] highly personal matters representing the most intimate aspect of human affairs. Indeed, the constitutional right

---

[1] We recognize that there are other constitutionally protected rights that can be said to involve privacy concerns, such as the right to practice one's religion, which is protected by the First Amendment. *See*, *e.g.*, *Buckley v. Valeo*, 424 U.S. 1, 64 (1976). However, Malleus has only brought her claim under the Fourteenth Amendment.

11

of privacy, which courts have been reluctant to expand, shields from public scrutiny only that information which involves deeply rooted notions of fundamental personal interests derived from the Constitution. In this respect, the federal right of privacy is significantly narrower than the right of privacy protected by state tort law.

*Nunez v. Pachman*, 578 F.3d 228, 232 (3d Cir. 2009) (internal quotation marks and citations omitted). Were our circuit to apply the broadest test for privacy accepted in any of our sister circuits, Malleus's opinion would still not be constitutionally protected. In the Eighth Circuit, "to violate [a person's] constitutional right of privacy, the information disclosed must be either a shocking degradation or an egregious humiliation of her to further some specific state interest, or a flagrant breech [sic] of a pledge of confidentiality which was instrumental in obtaining the personal information." *Alexander v. Peffer*, 993 F.2d 1348, 1350 (8th Cir. 1993). The information that Malleus shared, while potentially embarrassing, could not cause a "shocking degradation" or an "egregious humiliation." *Id.*

As there is no Fourteenth Amendment right to privacy for the type of information in this case, Malleus cannot state a claim under § 1983. We will affirm the decision of the District Court granting George, Hackman, and Conrad's motion to dismiss.

12

## IV.

For the reasons set forth above, we will affirm the order of the District Court.