In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-1761

BECKY S. CHASENSKY,

*Plaintiff-Appellee,*

*v.*

SCOTT WALKER, et al.,

*Defendants-Appellants.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 11-C-1152 — **Rudolph T. Randa**, *Judge.*

ARGUED NOVEMBER 13, 2013 — DECIDED JANUARY 22, 2014

Before MANION, KANNE, and HAMILTON, *Circuit Judges.*

MANION, *Circuit Judge.* Wisconsin Governor Scott Walker planned to appoint Becky Chasensky interim Marinette County Register of Deeds but decided against it after learning she had filed for bankruptcy. In response, Chasensky sued Walker and his then-spokesperson, Cullen Werwie, alleging that Walker's decision not to appoint her along with their public statements concerning that decision violated her constitutional and

statutory rights. The district court held that the defendants waived qualified immunity by failing to raise it as a defense until their motion to dismiss Chasensky's amended complaint. The defendants then filed this interlocutory appeal claiming they did not waive and are entitled to qualified immunity. We agree, and reverse.

## I. BACKGROUND

In Wisconsin, the state constitution makes the Register of Deeds an elected position. *See* Wis. Const. art. VI, § 4. However, if a vacancy occurs mid-term, the governor is authorized to appoint an interim Register to complete the remainder of any unexpired portion of the term until a successor is elected. *See* Wis. Const. art. VI, § 4(5).

Chasensky alleges the following facts which, given the procedural posture of this case, we accept as true. *See Serino v. Hensley,* 735 F.3d 588, 590 (7th Cir. 2013) (citing *Parish v. City of Elkhart,* 614 F.3d 677, 678 n.1 (7th Cir. 2010) ("In reviewing a motion to dismiss, we accept the facts of the plaintiff's complaint as true."). On December 29, 2010, the Register of Deeds for Marinette County announced her mid-term retirement. By letter dated January 11, 2011, Chasensky applied directly to Governor Walker seeking this interim appointment. Am. Compl. Because Chasensky was employed as Chief Deputy Register of Deeds, she was elevated and served as the acting Register of Deeds for Marinette County, effective January 14, 2011. On February 18, 2011, Chasensky was personally interviewed by Eric Esser, Governor Walker's appointments official, and Esser informed Chasensky that he would forward her application directly to Governor Walker for appointment

to the Register of Deeds position. Thereafter, Esser learned that Chasensky was involved in a personal bankruptcy proceeding. On April 5, 2011, Esser called Chasensky to inform her that Governor Walker would not be appointing her as interim Register of Deeds. Chasensky subsequently received a letter from Governor Walker confirming that he would not be appointing her as interim Register of Deeds.

According to Chasensky's amended complaint, Cullen Werwie, as Governor Walker's official spokesperson, publically broadcast statewide that Governor Walker did not appoint her to the position because the governor had been informed that she was in a bankruptcy proceeding. In addition to her non-appointment, Chasensky complained that "[d]erogatory comments and innuendo regarding [her] bankruptcy, personal financial matters and character which impugned and harmed [her] professional and personal reputation were intentionally publically disclosed by Governor Walker and Mr. Werwie." Am. Compl. ¶ 15. She insisted that this occurred when Governor Walker spoke statewide on the FOX television network. There he demeaned her professional and personal character by implying that information learned during an investigation was the reason he did not appoint her. About the same time, Werwie publically announced that Governor Walker had planned to appoint her until he learned of her 2009 bankruptcy proceeding. Chasensky further alleges that the individual ultimately appointed Register of Deeds was unqualified and "[c]onsequently, [she] was professionally disparaged, humiliated and demoted for a period of time from her Chief Deputy Register of Deeds position." Am. Compl. ¶ 18. Chasensky claims this sequence subjected her to an

> unwanted, highly embarrassing and intrusive
> media-fest [at work] on April 20–21, 2011 … [when]
> [t]elevision reporters and camera crews, newspaper
> and radio reporters and curious members of the
> public confronted her and other Marinette County
> employees with highly intrusive questions about her
> bankruptcy and professional and personal character
> and sought derogatory details implied in the defen-
> dants' public broadcasts.

Am. Compl. ¶ 21. Finally, in May 2011, she was threatened with "employment retaliation" if she did not continue to cover and perform core Register of Deeds duties which the appointee was incapable of performing. As a result of these actions, she has "suffer[ed] lost employment, salary, and other employment benefits, damage to her professional and personal reputation, and emotional and physical pain and suffering." Am. Compl. ¶ 23.

## II. PROCEDURAL HISTORY

This interlocutory appeal comes to us with a complicated procedural history that we distill as follows. Chasensky filed her complaint on December 21, 2011, alleging that Walker and Werwie (the "defendants") violated her privacy rights and employment rights and that Walker violated 11 U.S.C. § 525(a) (the "bankruptcy discrimination claim") by failing to appoint her as interim Register of Deeds of Marinette County upon learning of her bankruptcy proceeding. Pretrial litigation ensued including intervention by the United States Department of Justice resulting in the dismissal of the employment

claims and the bankruptcy discrimination claim.[1] On January 14, 2013, Chasensky filed an amended complaint reasserting all of her initial claims and adding an equal protection claim against Walker. On January 28, 2013, defendants filed a motion to dismiss Chasensky's amended complaint based on qualified immunity.[2] However, the district court concluded that defendants had waived the defense of qualified immunity by not raising it earlier in the proceeding.[3] Defendants timely filed an interlocutory appeal. We then issued an order directing the district court to explain its reasons for failing to address qualified immunity in its March 14, 2013, order. On July 28, 2013, the district court issued a second order explaining its March 14, 2013, order. The district court's July 28, 2013, order states, in pertinent part:

> Defendants never raised the issue of qualified immunity—not in their initial motion to dismiss, not in their supplemental briefing in relation to the United States' motion to intervene, not in their brief

---

[1]  Neither Chasensky's bankruptcy discrimination claim nor her employment claims are implicated by this appeal.

[2]  After the district court's order, the defendants filed their answer to the first amended complaint on March 27, 2013, wherein they reiterated their qualified immunity defense.

[3]  The district court's March 14, 2013, order did not dismiss the bankruptcy discrimination claim and employment claims that Chasensky re-alleged in her amended complaint. The district court, though, had previously dismissed them. On remand, the district court should enter an order reaffirming its dismissal of Chasensky's bankruptcy discrimination claim and employment claims.

in opposition for leave to file an amended complaint, and not even in their answer to the original complaint. It was only after the Court granted leave to file an amended complaint, and after over a year of extensive motion practice, that the defendants raised qualified immunity. The Court's subsequent order was terse because the Court had already issued rulings allowing [plaintiff's] claims to go forward, and the defendants were clearly engaged in dilatory tactics to either delay or avoid discovery. Defendants waived the qualified immunity defense, at least with respect to the pre-discovery stage of this litigation. *See, e.g., English v. Dyke,* 23 F.3d 1086, 1090 (6th Cir. 1994) ("the trial court has discretion to find a waiver if a defendant fails to assert the defense within time limits set by the court *or if the court otherwise finds that a defendant has failed to exercise due diligence or has asserted the defense for dilatory purposes*") (emphasis added).

*Chasensky v. Walker,* Case No. 11-C-1152, 2013 U.S. Dist. LEXIS 105698, *2–3 (E.D. Wis., July 28, 2013). Defendants timely filed an interlocutory appeal contesting the district court's July 28, 2013, order.

### III. ANALYSIS

### A. Interlocutory appellate jurisdiction

Initially, Chasensky argues that we lack jurisdiction over this interlocutory appeal. It is well-settled law that we "treat [ ] the rejection of an immunity defense as a final decision for the purpose of 28 U.S.C. § 1291." *Bond v. Atkinson,* 728 F.3d 690,

691(7th Cir. 2013); *see also Mitchell v. Forsyth,* 472 U.S. 511, 524–25 (1985). When, as here, the district court rejects the defense of qualified immunity raised in a defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(6), we review the district court's ruling *de novo,* accepting as true the plaintiff's factual allegations and drawing all reasonable inferences in her favor. *May v. Sheahan,* 226 F.3d 876, 882 (7th Cir. 2000).

Nevertheless, Chasensky asserts that we lack interlocutory appellate jurisdiction to review the district court's denial of qualified immunity regarding her privacy claims because the defendants waived this defense by not timely raising it. However, "a finding of waiver is a legal determination which enables appellate review of the denial of qualified immunity." *Hernandez v. Cook Cnty. Sheriff's Office,* 634 F.3d 906, 912–13 (7th Cir. 2011); *see also Pasco v. Knoblauch,* 566 F.3d 572, 575 (5th Cir. 2009) (exercising appellate jurisdiction over denial of summary judgment based on the district court's finding that qualified immunity had been waived); *Eddy v. V.I. Water & Power Auth.,* 256 F.3d 204, 209 (3d Cir. 2001) (same). Accordingly, we have interlocutory appellate jurisdiction to consider the defendants' defense of qualified immunity.

## B. Defendants did not waive the defense of qualified immunity

Because we have concluded that we have appellate jurisdiction, we now turn to the issue of whether defendants' failure to raise the defense of qualified immunity until their motion to dismiss Chasensky's amended complaint (filed fourteen days after her amended complaint was filed) was waiver. The district court ruled that defendants

> never raised the issue of qualified immunity—not in their initial motion to dismiss, not in their supplemental briefing in relation to the United States' motion to intervene, not in their brief in opposition for leave to file an amended complaint, and not even in their answer to the original amended complaint. It was only after the Court granted leave to file an amended complaint, and after over a year of extensive motion practice, that the defendants raised qualified immunity.

*Chasensky,* 2013 U.S. Dist. LEXIS 105698, at *2. This ruling sidesteps basic pleading principles. After obtaining leave of court, Chasensky filed her amended complaint on January 14, 2013. Defendants filed their brief in support of their motion to dismiss her amended complaint on January 28, 2013. "When a plaintiff files an amended complaint, the new complaint supersedes all previous complaints and controls the case from that point forward … [b]ecause a plaintiff's new complaint wipes away prior pleadings, the amended complaint opens the door for defendants to raise new and previously unmentioned affirmative defenses." *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999) (citation omitted); *see also* Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1476 at 636 (3d ed. 2010).[4] That the defendants did not raise qualified immunity earlier in response to Chasensky's

---

[4] Chasensky asserts that the defendants raised qualified immunity for the first time in their reply brief, *see* Appellee Br. 18, but a review of defendants' pleadings filed after Chasensky filed her amended complaint makes clear that this assertion is incorrect.

original complaint is irrelevant because the defendants raised the defense of qualified immunity at the very first opportunity after Chasensky filed her amended complaint. They then raised it again later in their answer to her amended complaint. Accordingly, as a matter of law, defendants did not waive the defense of qualified immunity. *See English v. Dyke,* 23 F.3d 1086, 1089 (6th Cir. 1994) (reversing district court's holding that defendants' failure to raise the defense of qualified immunity in their pre-answer motion to dismiss operated as a waiver of that defense).

### C. Defendants have qualified immunity from Chasensky's privacy and equal protection claims

### i. Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Rabin v. Flynn*, 725 F.3d 628, 632 (7th Cir. 2013) (citation omitted). "Immunity has of course two parts: the right not to be tried, and the right not to pay damages." *Abel v. Miller*, 904 F.2d 394, 397 (7th Cir. 1990). "To be clearly established, at the time of the challenged conduct, the right's contours must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right [and] … and existing precedent must have placed the statutory or constitutional question beyond debate." *Humphries v. Milwaukee Cnty.*, 702 F.3d 1003, 1006 (7th Cir. 2012) (internal quotation marks and citation omitted). This standard "protects the balance between vindication of constitutional rights and government officials'

effective performance of their duties by ensuring that officials can reasonably … anticipate when their conduct may give rise to liability for damages." *Reichle v. Howards,* 132 S. Ct. 2088, 2093 (2012) (internal quotation marks and citations omitted). "[A] court may grant qualified immunity on the ground that a purported right was not 'clearly established' by prior case law without first resolving whether the purported right exists." *Humphries*, 702 F.3d at 1006 (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). The plaintiff carries the burden of defeating the qualified immunity defense. *Id.*

We review the validity of a qualified immunity defense *de novo*. *Estate of Rudy Escobedo v. Martin,* 702 F.3d 388, 404 (7th Cir. 2012) (citing *Elder v. Holloway,* 510 U.S. 510, 516 (1994)). Further, "[b]ecause 'the district court's refusal to address the merits of [defendants'] motion asserting qualified immunity constitutes a conclusive determination for the purposes of allowing an interlocutory appeal,' and the record permits this court to resolve some of [d]efendants' immunity claims, this court will reach the merits of those claims rather than remand them to the district court." *Smith v. Leis,* 407 Fed. Appx. 918, 927 (6th Cir. 2011) (unpublished) (citing *Summers v. Leis,* 368 F.3d 881, 887 (6th Cir. 2004)). Accordingly, we now examine the merits of the defendants' qualified immunity defense.

### ii. Chasensky's privacy allegations in her amended complaint fail to allege a violation of clearly established law

First, we consider Chasensky's privacy allegations. Chasensky's amended complaint alleged that defendants recklessly "broadcast[ed] throughout the State of Wisconsin

derogatory and demeaning information about her professional and personal character and reputation … ." Am. Compl. ¶ 24 (Walker); ¶ 26 (Werwie). Defendants respond that the allegations in Chasensky's amended complaint do not survive the pleading requirements of *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), which requires the plaintiff to "state a claim to relief that is plausible on its face." *Id.* at 678 (internal quotation marks and citation omitted).

Initially, we note that it is difficult to see where in Chasensky's complaint or amended complaint she alleged a privacy claim,[5] since neither her complaint (nor her subsequently filed amended complaint) contained the word "privacy." To survive a motion to dismiss, "a complaint need not plead legal theories, which can be learned during discovery," *Alito v. Town of Lisbon,* 651 F.3d 715, 721 (7th Cir. 2011) (citations omitted). Yet, we cannot see why a plaintiff would elect not to include the word "privacy" when alleging—or at least titling the counts when alleging—a violation of the right to privacy in a complaint. Nevertheless, we consider whether the allegations lodged in Chasensky's complaints at ¶¶ 14–17, if true, give rise to a violation of a clearly established right to privacy.

Chasensky argues that they do based on *Denius v. Dunlap,* 209 F.3d 944, 955–56 (7th Cir. 2000); *Malleus v. George,* 641 F.3d 560, 564–66 (3d Cir. 2011); and *Whalen v. Roe,* 429 U.S. 589, 599–600 (1977). These cases, she asserts, recognize a "clearly established right to informational privacy," Appellee Br. 23,

---

[5]  At oral argument, Chasensky directed us to ¶¶ 14–17 of her complaints.

which defendants violated by "recklessly broadcasting throughout the State of Wisconsin derogatory and demeaning information about her professional and personal character and reputation … ." Am. Compl. ¶ 24 (Walker); ¶ 26 (Werwie). Indeed, it is true that

> [t]he courts of appeals, including this court, have interpreted *Whalen* to recognize a constitutional right to the privacy of medical, sexual, financial, and perhaps other categories of highly personal information—information that most people are reluctant to disclose to strangers—and have held that the right is defeasible only upon proof of a strong public interest in access to or dissemination of the information.

*Wolfe v. Schaefer,* 619 F.3d 782, 785 (7th Cir. 2010) (citing *Denius,* 209 F.3d at 955–58; other citations omitted).

But the *Denius* case does not help Chasensky. In *Denius,* the director of a GED school refused to renew plaintiff's employment contract unless he signed an authorization releasing information, including financial information. 209 F.3d at 955–56. Although we recognized that the director violated the teacher's privacy rights by requiring disclosure of his medical records, we nonetheless "conclude[d] that Dunlap [wa]s shielded by qualified immunity for requiring Denius to disclose confidential financial information. …" *Id.* at 958. There, the teacher was commanded to produce private *medical* information or face termination. *Id.* at 949. Here, all the defendants allegedly did was publicize the already-published fact that Chasensky had filed bankruptcy. Chasensky's desire

to avoid the broad public disclosure of already-published financial information so that she might secure a discretionary political appointment is simply not similar to compulsory disclosure of private medical information in the face of termination. The right of privacy Chasensky asserts in her financial situation was not recognized in *Denius.* The fact that the school director in *Denius* received qualified immunity for requiring the disclosure of plaintiff's *financial* records underscores this point. *Id.* at 958. Chasensky fails to allege sustainable privacy claims against the defendants.

Chasensky fares no better with *Malleus v. George,* 641 F.3d 560 (3d Cir. 2011). The *Malleus* decision concluded that information *voluntarily* disclosed may not form the basis of a constitutional privacy claim, even when it is subsequently passed on to a much wider audience than the one that initially received it. *Id.* at 565 ("She may not have intended wide-dissemination of her opinion but she volunteered it to others …"). Here, Chasensky acknowledges that she voluntarily signed a waiver authorizing the disclosure of private information to the Wisconsin Department of Justice in exchange for being considered for the appointment she sought.[6] Although

---

[6] Defendants filed a motion to dismiss Chasensky's complaint. In her opposition, Chasensky asserted that her complaint at ¶¶ 16–17 alleged that she was "required to sign an extremely broad authorization for release of financial and other private information." Br. in Op. 20. Although we were not able to discover this allegation in her complaint (or amended complaint, wherein these paragraphs remain identical), we may consider representations drawn from Chasensky's opposition to defendants' motion to dismiss insofar as they are consistent with her complaint. *Geinosky v. City of Chicago,*

(continued...)

we need not—and do not—decide whether *Malleus* accurately states the law regarding constitutional privacy claims, that decision's reasoning certainly does not support Chasensky's claim in this instance.

Moreover, Chasensky overlooks the fact that the defendants did not need her consent in the first place to learn that she filed bankruptcy. Bankruptcy proceedings, like most unsealed legal proceedings, are public record. This information is frequently published in newspapers and is easily accessible in cyberspace. "For example, all bankruptcy court dockets can be searched simultaneously through the federal courts' PACER service."[7] *Pippen v. NBCUniversal Media, LLC,* 734 F.3d 610, 614 (7th Cir. 2013). At its core, Chasensky's privacy claim is merely the assertion of a right to the limited publicity of an already-published fact. Here, that claim must fail because the information about her financial history that she claims defendants unlawfully publicized was not private even before she signed a waiver authorizing defendants to explore it.

For Chasensky's privacy allegations to defeat defendants' defense of qualified immunity, "existing precedent must have placed the statutory or constitutional question beyond debate."

---

[6] (...continued)
675 F.3d 743, 745–46 n.1 (7th Cir. 2012) (collecting cases).

[7] "Public Access to Court Electronic Records (PACER) is an electronic public access service that allows users to obtain case and docket information from Federal Appellate, District and Bankruptcy courts, and from the PACER Case Locator via the Internet." *See* PACER - Frequently Asked Questions, http://www.pacer.gov/psc/faq.html (last visited January 14, 2014).

*Humphries,* 702 F.3d at 1006 (citations and internal quotation marks omitted). We recognize that "'a case directly on point is not required for a right to be clearly established' and 'officials can still be on notice that their conduct violates established law even in novel factual circumstances.'" *Phillips v. Cmty. Ins. Corp.,* 678 F.3d 513, 528 (7th Cir. 2012) (quoting *Hope v. Pelzer,* 536 U.S. 730, 741 (2002)). But for the purpose of defeating qualified immunity in this instance, Chasensky has not proven that her right to the limited publicity of an already-published fact is "clearly established" so that an individual may be held civilly liable for publicizing already-published information. Defendants are, therefore, entitled to qualified immunity because they have violated no clearly established privacy right.

### iii. Walker did not violate the equal protection clause when he declined to award a discretionary appointment to Chasensky

Chasensky's amended complaint also alleged that Walker violated her equal protection rights by denying her employment because she filed for bankruptcy. Am. Compl. ¶ 25. In *United States v. Kras,* the Court rejected the plaintiff's equal protection claim and held that challenges to government-imposed burdens from bankruptcy are subject to rational basis review. 409 U.S. 434, 446 (1973). Accordingly, Chasensky's bankruptcy equal protection challenge cannot succeed "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *F.C.C. v. Beach Commc'n, Inc.,* 508 U.S. 307, 313 (1993). In other words, Chasensky bears the burden of "negat[ing] every conceivable basis which might support [Walker's decision not to appoint her]." *Id.* at 315 (citation omitted).

In light of this steep burden, it is unreasonable to suggest that gubernatorial consideration of an applicant's bankruptcy —a component of her personal history—could not be rationally related to legitimate governmental interests. The responsibilities associated with the office at issue entail maintaining financial and public land records and collecting and disbursing substantial sums of money, including recording fees and transfer taxes. The fact that a candidate for this appointment has filed bankruptcy, coupled with the fact that the desired public office involves management of a staff responsible for significant sums of money, conceivably raises questions regarding the practical—and political—wisdom of appointing that applicant. While the parties dispute whether the position's duties are "ministerial" or not, it is apparent from the definition of its defined duties in Wis. Stat. § 59.43 that the position of Register demands—at minimum—supervisory and financial responsibility.

Chasensky cites no case law suggesting that the equal protection clause precludes gubernatorial consideration of an applicant's bankruptcy when she has applied for a political appointment. Consequently, Walker violated no "clearly established" law by failing to appoint Chasensky for the position she sought. *Humphries*, 702 F.3d at 1006 (quoting *Pearson,* 555 U.S. at 236). Nor did Walker violate Chasensky's constitutional rights by declining to exercise his gubernatorial discretion for her benefit. The rule in this circuit is clear. "A governmental officer holding the power of appointment may make any decision he pleases, unless the Constitution bars the

way." *Kurowski v. Krajewski,* 848 F.2d 767, 770 (7th Cir. 1988).[8] The Constitution does not bar Walker's non-appointment of Chasensky to Register of Deeds.

Alternatively, and despite the fact that the appointment in question is awarded by the elected head of state, Chasensky asserts that neither gubernatorial concern about the potential appointee's ultimate electability nor Walker's desire to avoid adverse political repercussions from unwise appointments is a legitimate governmental interest. We disagree. "[I]t would undermine the democratic process to hold that the winners at the polls may not employ those committed to implementing their political agenda." *Id*. Chasensky argues that the Supreme Court recognized a distinction between pure partisan political interests and legitimate governmental interests in *Elrod v. Burns*, 427 U.S. 347 (1976). But it is precisely because these interests are aligned here that we must respect the weight appointment decisions made by elected and politically-accountable individuals are due. Chasensky implies that in practice wise appointment decisions inure principally to the benefit of the elected official, not the citizenry. But that perspective fails to appreciate what should be obvious: both the official *and the citizenry* are better off when elected officials avoid poor appointment decisions that have the potential to mature into public malfeasance.

---

[8] *Cf.* Saikrishna Prakash, *The Appointment and Removal of William J. Marbury and When an Office Vests,* 89 NOTRE DAME L. REV. 199, 231 (2013) ("Because the Constitution never dictates how or when an appointment is made, an appointment vests however and whenever the appointer decides that it should vest.").

There was no violation—let alone a clearly established violation—of the equal protection clause when Walker declined to award Chasensky a discretionary appointment to a constitutional office. Consequently, Walker enjoys qualified immunity from Chasensky's equal protection claim.

## IV. CONCLUSION

For the reasons stated above, we conclude that we have interlocutory appellate jurisdiction to consider this appeal. Further, we conclude that the defendants did not waive the defense of qualified immunity when they did not raise it until their motion to dismiss Chasensky's amended complaint. Finally, the defendants are entitled to qualified immunity from Chasensky's privacy and equal protection claims. For the foregoing reasons, we REVERSE the March 14, 2013, and July 28, 2013, orders of the district court and REMAND this case for proceedings consistent with this opinion.