In the

# United States Court of Appeals
## For the Seventh Circuit

No. 24-3175

MARWAN MAHAJNI,

*Plaintiff-Appellee*,

*v.*

VU DO and SCOTT WOIDA,

*Defendants-Appellants*.

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:24-cv-00416 — **Pamela Pepper**, *Chief Judge*.

ARGUED NOVEMBER 5, 2025 — DECIDED APRIL 13, 2026

Before RIPPLE, KIRSCH, and LEE, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Marwan Mahajni brought this section 1983 action against two deputies in the Wisconsin state court system. Deputy Vu Do and Deputy Scott Woida supervised the jury during deliberations in a state criminal case where he was the defendant. In his complaint, Mr. Mahajni claimed that the deputies violated his constitutional rights by telling the jury during deliberations that it had to reach a unanimous verdict and that a hung jury was not a permissible

outcome of its deliberations. He further alleged that this epi-
sode resulted in his wrongful conviction.[1]

The deputies filed an answer asserting qualified immunity
as an affirmative defense. They then filed a Rule 12(c) motion
for judgment on the pleadings. In an oral ruling, the district
court denied qualified immunity to Deputy Do, who had
made the statement to the jury. In the same ruling, the district
court also denied *without prejudice* qualified immunity to Dep-
uty Woida and invited him to submit further arguments at
summary judgment. Unlike Deputy Do, Deputy Woida had
not spoken to the jury. According to the complaint, he had
violated Mr. Mahajni's rights by failing to stop his colleague's
advice to the jury and by failing to report the incident to the
presiding judge.

Following the district court's oral ruling, Deputy Woida
filed this appeal challenging the denial of qualified immunity.
We now hold that the district court's action did not constitute
a final adjudication of the qualified immunity issue as it re-
lated to Deputy Woida. An appeal under the collateral order
doctrine is therefore not currently available to him and we
dismiss this appeal for want of appellate jurisdiction.

---

[1] Mr. Mahajni's conviction was reversed by the state courts because of the
deputies' unauthorized intervention into the jury's deliberations. State
prosecutorial authorities declined further prosecution.

# I

# BACKGROUND

## A. Facts[2]

In August 2013, Wisconsin prosecutorial authorities charged Mr. Mahajni with one count of kidnapping and four counts of second-degree sexual assault. At trial, the state court instructed the jury that "before the jury may return a verdict which may legally be received, that verdict must be reached unanimously as to each count. In a criminal case all 12 jurors must agree in order to arrive at a verdict on each count."[3] The court also instructed the jury:

> If you need to communicate with the Court while you're deliberating, send a note through the bailiff signed by the presiding juror. To have a complete record of this trial, it's important that you communicate with the court only by written note.
>
> If you have questions, the court will talk with the lawyers before answering, so it may take some time before I can get you an answer. You should continue your deliberations while you wait for an answer. The court will answer any questions in writing or orally with anyone here in open court.[4]

---

[2] At this stage of the proceedings, we accept as true the allegations in the complaint.

[3] R.35-1 at 130:06–10.

[4] *Id.* at 130:16–131:03.

Deputies Do and Woida were the bailiffs assigned for jury deliberations. The trial court administered the following oath to them:

> Do you solemnly swear or affirm under penalty of law that you will keep this jury together as ordered, that you will not permit any person to speak to them, and that you will not speak to them yourself unless by order of the court[?][5]

During deliberations, a juror asked Deputy Do whether the jurors could be deadlocked on any of the counts. Deputy Do told the jurors that they all had to agree on guilty or not guilty and that they were not allowed to be hung or deadlocked. Deputy Woida was present when Deputy Do made these comments, but he did not intervene to stop Deputy Do. Nor did he report the incident to the trial court. Mr. Mahajni does not allege that Deputy Woida spoke to any jurors.

The jury returned a guilty verdict on one count of kidnapping and one count of second-degree sexual assault. After returning the verdict, two jurors spoke to the trial judge and for the first time learned that a hung jury was a permissible outcome. Mr. Mahajni was sentenced to thirty years in prison followed by twenty years of extended supervision.

Mr. Mahajni filed a motion for a new trial, contending that Deputy Do's comments prejudiced the jury. The trial court denied the motion as well as a motion for reconsideration. On appeal, the Wisconsin Court of Appeals held that the trial court had erred by denying the motion for a new trial without first holding an evidentiary hearing.

---

[5] R.1, ¶ 26.

On remand, the trial court held an evidentiary hearing. Two jurors testified that Deputy Do had told them that they must reach a unanimous decision of guilty or not guilty. They further testified that Deputy Do's statement had influenced their decision. The trial court found that at least one juror received prejudicial extraneous information. It then vacated Mr. Mahajni's convictions and ordered a new trial. Approximately two years later, the State moved to dismiss the charges, and the state court granted the motion. By this time, Mr. Mahajni had been imprisoned for approximately six years and eight months.

### B.  Proceedings in the District Court

Mr. Mahajni filed the present action in the United States District Court for the Eastern District of Wisconsin. He named as defendants Deputy Do, Deputy Woida, Milwaukee County, Sheriff David Clarke, ABC Insurance Company, and John Does 1 through 5.[6] The complaint set forth ten claims, six of which are relevant to this appeal.[7] Count 1 alleged that all

---

[6] According to the complaint, David Clarke was the Sheriff of Milwaukee County at the time. John Does 1 through 5 are individuals employed by Milwaukee County who were operating under color of state law and either contributed to or failed to prevent Mr. Mahajni's constitutional harm. ABC Insurance Company is allegedly the company that provides liability insurance to Milwaukee County. None of these entities are parties to this appeal.

[7] Counts 4, 8, 9, and 10 are not directed at Deputy Do or Deputy Woida. Count 4 alleged *Monell* liability against Milwaukee County and Sheriff Clarke. Count 8 alleged that Milwaukee County negligently hired, trained, and supervised Deputy Do and Deputy Woida. Count 9 is a claim for state law indemnification, asserting that under Wisconsin law, the County is obligated to pay any tort judgment entered against its

of the defendants violated Mr. Mahajni's right to a fair trial under the Sixth and Fourteenth Amendments. Count 2 alleged that all the defendants had violated Mr. Mahajni's due process rights under the Fourteenth Amendment. Count 3 alleged that Deputy Woida and Does 1 through 5 had failed to intervene to prevent a violation of Mr. Mahajni's constitutional rights in violation of Wisconsin state law. Invoking § 1983, Count 5 alleged that Deputy Do and Deputy Woida violated Mr. Mahajni's Fourth and Fourteenth Amendment rights against cruel and unusual punishment. Count 6 alleged that Deputy Do and Deputy Woida negligently inflicted emotional distress on Mr. Mahajni by violating his Fourth Amendment rights. Count 7 alleged that Deputy Do and Deputy Woida intentionally inflicted emotional distress on Mr. Mahajni by violating his Fourth Amendment rights. Deputy Do and Deputy Woida filed an answer asserting qualified immunity.

Milwaukee County, Sheriff Clarke, Deputy Do, and Deputy Woida moved for judgment on the pleadings. The defendants submitted that Mr. Mahajni's claims were barred by the statute of limitations. Deputy Woida also argued that he was entitled to absolute and qualified immunity. Deputy Do argued that he was entitled to qualified immunity.

A single section of the defendants' briefing on this motion addressed both Deputy Do's and Deputy Woida's qualified immunity defenses. Deputy Do and Deputy Woida did not distinguish between Mr. Mahajni's Fourth, Sixth, and Fourteenth Amendment claims, instead stating broadly that, even

---

employees. Count 10 is a claim under the Wisconsin Direct Action Statute against ABC Insurance Company.

if Mr. Mahajni could establish a violation of "his constitutional rights, these rights were not clearly established at the time of the alleged conduct."[8] Notably, the briefing did not address specifically Deputy Woida's alleged conduct.

In response to this motion to dismiss, Mr. Mahajni argued that it is clearly established that a bailiff violates a defendant's Sixth Amendment right to an impartial jury when he provides the jury with extraneous information.[9] Mr. Mahajni pointed to *United States ex rel. Tobe v. Bensinger*, 492 F.2d 232 (7th Cir. 1974), where we decided that a bailiff had violated a defendant's Sixth Amendment right to an impartial jury by telling the jurors that there could not be a hung jury and that the government had failed to prove that the communication was not prejudicial. Notably, Mr. Mahajni did not cite any cases discussing a failure to intervene and did not mention Deputy Woida's conduct specifically, instead treating Deputy Do and Deputy Woida as having engaged in the same conduct.

The district court decided the motion by rendering an oral ruling. On the immunity issues, it denied qualified immunity to Deputy Do, ruling that *United States ex rel. Tobe* was an analogous case and clearly established that Deputy Do's conduct violated Mr. Mahajni's Sixth Amendment right to an impartial jury. As to Deputy Woida, the district court stated that "the question is a little more complicated … because neither party separated out the allegations against Woida from the allegations against Do."[10] More specifically, the district court

---

[8] R.21 at 11.

[9] Mr. Mahajni did not address whether there was a similar clearly established right under the Fourth or Fourteenth Amendments.

[10] R.47 at 38:08–11.

explained that neither party had properly addressed the qualified immunity issue *as it applied to Deputy Woida*:

> And neither party went into any discussion analyzing the claims against Woida specifically. Both parties lumped Do and Woida together and spent a lot of time talking about qualified immunity and what qualified immunity is and what qualified immunity means and various cases on it, but nobody actually applied it to discuss a claim of failure to intervene and failure to report. So I don't really have any help from either side in determining whether qualified immunity applies to Woida.[11]

The court then explained that, in the absence of any argument on the issue, it had three options. First, it could rule that Mr. Mahajni had failed to meet his burden of persuasion because he did not present argument against Deputy Woida specifically. However, the court decided against this course because it determined that Deputy Woida had not presented specific arguments in favor of qualified immunity to which Mr. Mahajni could respond. The court then passed over the second option—ordering additional briefing—and settled on the third option, denying qualified immunity to Deputy Woida without prejudice while specifically instructing him to raise an argument that addresses Deputy Woida's conduct at summary judgment. The court explained:

> I am not going to extend qualified immunity to Deputy Woida *at this time, but I'm making that decision without prejudice,* which means that if the

---

[11] *Id.* at 38:21–39:04.

> defendants do have an argument and -- and a detailed argument regarding the allegations with regard to Woida, they have the option to raise the qualified immunity issue again at the summary judgment phase if they choose to do so, but I am not going to dismiss him based on qualified immunity today.[12]

The district court also stated that "Woida's the one I have absolutely no information on one way or the other."[13]

Following the entry of the order, Deputy Do and Deputy Woida filed a Notice of Interlocutory Appeal.[14]

## II

## DISCUSSION

Although the parties have not questioned our jurisdiction to entertain this interlocutory appeal, we have the independent duty to ensure that we have such authority. When faced with an invocation of the collateral order doctrine, our obligation to scrutinize the legitimacy of our jurisdiction is, in many ways, especially important. Although Congress has delegated substantial authority to identify exceptions to the federal courts' rule making process under the Rules Enabling Act, *see* 28 U.S.C. § 1292(e), the Federal Judicial Code still makes clear that, generally, federal appellate resources are to be reserved

---

[12] *Id.* at 39:20–40:02 (emphasis added).

[13] *Id.* at 53:25–54:01.

[14] While Deputy Do remains a party to the appeal, no arguments have been raised that the court erred in denying qualified immunity to him.

for the scrutiny of "final decisions" of the district courts. 28
U.S.C. § 1291.

The federal courts have long acknowledged that faithful
observance of this congressional policy choice in favor of fi-
nality does not require, or even permit, slavish adherence to
the view that a final decision is necessarily "the last order pos-
sible to be made in a case." *Gillespie v. U.S. Steel Corp.*, 379 U.S.
148, 152 (1964). Rather, "the requirement of finality is to be
given a 'practical rather than a technical construction.'" *Id.*
(quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546
(1949)). This understanding of finality is the established justi-
fication for what has come to be known as the "collateral or-
der doctrine." Under that doctrine, a decision of the district
court is appealable if it comes within "that small class which
finally determine claims of right separable from, and collat-
eral to, rights asserted in the action, too important to be de-
nied review and too independent of the cause itself to require
that appellate consideration be deferred until the whole case
is adjudicated." *Cohen*, 337 U.S. at 546.

The Supreme Court's case law, as well as the case law of
this court, firmly establishes that the denial of a claim of qual-
ified immunity is a "final decision" subject to immediate ap-
peal under the collateral order doctrine. *See Behrens v. Pelletier*,
516 U.S. 299, 307 (1996); *Mitchell v. Forsyth*, 472 U.S. 511 (1985).
In *Mitchell*, the Supreme Court set forth succinctly the reason-
ing animating this principle. The Court noted that qualified
immunity is not only separate conceptually from the under-
lying merits of the case but is also a right the protection of
which will be lost irretrievably if it is not available to the de-
fendant at the outset of the litigation. Immunity protects the
government official not only from the jeopardy of incurring a

monetary judgment but also from the burden of having to litigate claims of no legal merit. *Mitchell*, 472 U.S. at 526–27.

If the district court had ruled *definitively* that Deputy Woida is not entitled to qualified immunity, the reasons underlying the collateral order doctrine certainly would justify an immediate appeal. A close examination of the record convinces us, however, that the district court made no such definitive ruling. Its concern focused on an antecedent problem: The parties had not recognized that the situation of Deputy Woida was substantially different from that of Deputy Do and certainly had not addressed adequately that difference.

A decision to postpone ruling on qualified immunity is not appealable. *Khorrami v. Rolince*, 539 F.3d 782, 786 (7th Cir. 2008). The court's order must have findings of fact and conclusions of law deciding qualified immunity to be appealable. *Gosnell v. City of Troy*, 979 F.2d 1257, 1261 (7th Cir. 1992). In *Beathard v. Lyons*, we held that we did not have appellate jurisdiction over an order that postponed ruling on qualified immunity until the record was more fully developed. 129 F.4th 1027, 1034 (7th Cir. 2025). The order stated that the defendants' motion to dismiss was "denied," however, the rest of the order made clear that "the [district] court did not think it advisable to address qualified immunity with only the allegations of Beathard's complaint to inform its assessment." *Id.* at 1033. Because the order did not suggest that the plaintiff had pleaded enough to overcome qualified immunity nor that plaintiff had failed to overcome qualified immunity, we held that the district court "did not settle or even tentatively decide anything about the merits of the defendants' qualified-immunity arguments." *Id*. at 1034 (citation modified).

The order here is similar to the order in *Beathard*. The district court started by explaining that both parties had misapprehended the qualified immunity issue as it applied to Deputy Woida: "so I don't really have any help from either side in determining whether qualified immunity applies to Woida."[15]

Although the court technically denied the motion, it did not address the merits of qualified immunity, nor did it hold that either party had waived its arguments. Additionally, it specifically stated that it was "not going to extend qualified immunity to Deputy Woida *at this time, but I'm making that decision without prejudice"* which evinces an intent to postpone ruling on the merits of the issue.[16] At the conclusion of the order, when defense counsel asked whether the ruling on Deputy Do's immunity was with or without prejudice, the court distinguished its rulings on Deputy Do and Deputy

---

[15] R.47 at 39:02–04. It is true that we have found no appellate jurisdiction where the district court withholds decision on qualified immunity because of a lack of *factual* development, because appellate review of qualified immunity decisions is limited to questions of law. *See, e.g.*, *Villalobos v. Picicco*, 168 F.4th 1057, 1061 (7th Cir. 2026). But our precedent demonstrates that it is not the case that we have jurisdiction to hear all other qualified immunity orders. If the order does not "settle or even tentatively decide anything" about qualified immunity, we lack jurisdiction, whether the district court premised its refusal to decide on a lack of factual development or on the absence of relevant legal argument. *Beathard v. Lyons*, 129 F.4th 1027, 1034 (7th Cir. 2025) (citation modified); *Gosnell v. City of Troy*, 979 F.2d 1257, 1261 (7th Cir. 1992) (finding no appellate jurisdiction where the district court dismissed defendants' summary judgment motion without discussing their bid for qualified immunity); *see also Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468–69 (1978).

[16] R.47 at 39:20–22 (emphasis added).

Woida, saying that its conclusion as to Deputy Do was a legal conclusion that his conduct violated a clearly established right, but by contrast, it had "absolutely no information on [Deputy Woida] one way or the other."[17] Like the order in *Beathard*, this order reserves a decision on qualified immunity for a later time, specifically summary judgment. The district court simply ruled that the question of Deputy Woida's immunity was not ripe for adjudication.[18] There is no substantive district court decision on qualified immunity for us to review. The policy concerns animating the collateral order doctrine therefore do not justify our permitting an interlocutory appeal.

## Conclusion

The appeal is dismissed for want of jurisdiction. The parties will bear their own costs.

APPEAL DISMISSED

---

[17] *Id.* at 53:25–54:01.

[18] It is worth noting that the district court's ruling does not inevitably subject Deputy Woida to unnecessary discovery. Deputy Woida has the option to move for summary judgment at any time. *See Jacobs v. City of Chicago*, 215 F.3d 758, 775–76 (7th Cir. 2000) (Easterbrook, J. concurring) (explaining procedural tools for resolving qualified immunity after the motion to dismiss stage without engaging in discovery); *see also Henry v. Hulett*, 969 F.3d 769, 786 (7th Cir. 2020) ("The most appropriate time to raise the qualified immunity issue is in a motion for summary judgment filed *before* allowing discovery." (citation modified)).

KIRSCH, *Circuit Judge*, dissenting. We shouldn't have to decide this case, but not because we lack jurisdiction. Marwan Mahajni's lawsuit against Deputy Scott Woida should have been over when Mahajni failed to respond to Deputy Woida's qualified immunity argument. The claims against Deputy Woida should have been dismissed a second time after the district court found that Mahajni hadn't carried his burden to show that qualified immunity didn't apply. And the claims against Deputy Woida should meet a swift end on remand because Mahajni still can't point to any clearly established law that Deputy Woida violated (because it doesn't exist). We should reverse the district court, and so I respectfully dissent.

I

I agree with my colleagues about the general outlines of the collateral order doctrine. While interlocutory orders (including those deciding motions to dismiss) usually are not appealable, there are exceptions, including for orders rejecting the defense of qualified immunity at the dismissal stage. See *Mitchell v. Forsyth*, 472 U.S. 511, 524–30 (1985); *Behrens v. Pelletier*, 516 U.S. 299, 307 (1996). A denial of qualified immunity that "turns on an issue of law" is an appealable final decision under 28 U.S.C. § 1291. *Mitchell*, 472 U.S. at 527–30.

We lack appellate jurisdiction when a district court declines to decide qualified immunity because the facts need further development. See *Beathard v. Lyons*, 129 F.4th 1027 (7th Cir. 2025); *Khorrami v. Rolince*, 539 F.3d 782 (7th Cir. 2008). But "[a]n order denying qualified immunity that turns on a pure legal issue is a 'final decision' under § 1291," such that the collateral order doctrine applies, and appellate jurisdiction is secure. *Harer v. Casey*, 962 F.3d 299, 305 (7th Cir. 2020); see *Chasensky v. Walker*, 740 F.3d 1088 (7th Cir. 2014). This

distinction—between denials that turn on undeveloped facts and those that turn on abstract legal analysis—is well-established. See *Johnson v. Jones*, 515 U.S. 304, 311 (1995).

I part ways with the majority on its conclusion that we lack appellate jurisdiction to review the district court's denial of Deputy Woida's motion to dismiss. Citing the absence of a definitive merits ruling or other findings about the defense, my colleagues hold that the district court postponed a decision on qualified immunity, such that the denial isn't final and we lack appellate jurisdiction. *Ante*, at 11–13 & n.15. But the district court ruled on qualified immunity in a way that secures our jurisdiction: the court made a "decision" to "not extend qualified immunity to Deputy Woida at this time" and made adequate factual and legal findings for us to review.

It's true that the district court suggested that its decision could change down the road and that it wanted to hear additional legal argument. But "no interlocutory decision is definitive" and "a paucity of legal analysis may be a reason to reverse an order but is not a reason to pretend that the judge never entered an order." *Asher v. Baxter Int'l, Inc.*, 505 F.3d 736, 740 (7th Cir. 2007) (citation modified); see *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 n.14 (1983) (noting that while "virtually all interlocutory orders may be altered or amended" that does not make them inherently tentative for purposes of collateral order reasoning). In the immunity context, we have found a final decision at the motion to dismiss stage despite a district court's insistence that denial was not on the merits, *Abelesz v. Magyar Nemzeti Bank*, 692 F.3d 661, 668–69 (7th Cir. 2012), when a district court denied a motion to dismiss based on an erroneous holding of waiver (and so provided no merits analysis), *Chasensky*, 740 F.3d at 1093–

95, and when a district court denied a motion to dismiss without discussing qualified immunity at all. *Hanes v. Zurick*, 578 F.3d 491, 492–94 (7th Cir. 2009). We did so in each instance because the decision was final in the way that matters for interlocutory review—the facts didn't require development and the law was clear.

That's what we have in this case, too. The district court made three findings of fact and conclusions of law that went to the merits of Deputy Woida's qualified immunity arguments, and that—combined with an adequately developed factual record—are sufficient to secure our appellate jurisdiction. See *Gosnell v. City of Troy*, 979 F.2d 1257, 1261 (7th Cir. 1992); *Beathard*, 129 F.4th at 1034. First, the district court found that Deputy Woida "raised qualified immunity." Second, the district court found that, with the defense having been raised, it was Mahajni's burden to show that qualified immunity did not apply. And third, the district court found that Mahajni had not carried that burden.

These findings were all correct. Defendants spent six pages of their brief in support of the motion on qualified immunity and noted the specific wrongful conduct (a failure to intervene) that Deputy Woida was alleged to have committed. See *Hernandez v. Cook Cnty. Sheriff's Off.*, 634 F.3d 906, 913 (7th Cir. 2011) ("[I]t is absolutely clear that the defendants' undeveloped opening brief argument supplied adequate notice [of a qualified immunity defense] to the plaintiffs and caused them no prejudice."). Once the defense was raised, Mahajni bore the burden of showing that it didn't apply. See *Fosnight v. Jones*, 41 F.4th 916, 924 (7th Cir. 2022). And in response to the motion, Mahajni cited no authority suggesting

that a failure to intervene to prevent an improper communication with a juror was unlawful.

The absence of a definitive merits ruling doesn't mean we lack jurisdiction. See *Abelesz*, 692 F.3d at 668–69. "Because the district court's refusal to address the merits of defendants' motion asserting qualified immunity constitutes a conclusive determination for the purposes of allowing an interlocutory appeal, and the record permits this court to resolve some of defendants' immunity claims, this court will reach the merits of those claims rather than remand them to the district court." *Chasensky*, 740 F.3d at 1095 (citation modified). To sum up, the district court decided to deny qualified immunity and that denial turns only on abstract questions of law: (1) whether Deputy Woida was entitled to qualified immunity when Mahajni failed to carry his burden in showing that it doesn't apply, and (2) whether the complaint alleged a claim that a clearly established right was violated. See *Hanson*, 967 F.3d at 590. That distinguishes this case from *Beathard*, on which the majority relies, because here the denial doesn't turn on a need for development of the factual record. Cf. 129 F.4th at 1034. Because the denial in this case turns on pure legal issues, the decision was final and we have jurisdiction. *Jackson v. Curry*, 888 F.3d 259, 262–63 (7th Cir. 2018); *Villalobos v. Picicco*, 168 F.4th 1057, 1065 (7th Cir. 2026) ("Normally, this court does not send 'pure questions of law' back to the district court.").

## II

When, as here, the district court rejects the defense of qualified immunity raised in a motion to dismiss, we review the ruling de novo, accepting as true all factual allegations in the complaint and drawing reasonable inferences in the plaintiff's favor. *Chasensky*, 740 F.3d at 1093. Applying that standard,

Deputy Woida is entitled to qualified immunity for two obvi-
ous reasons.

First, Mahajni's failure, in response to the motion to dis-
miss, to show that qualified immunity doesn't apply is fatal
to his claim. *Fosnight*, 41 F.4th at 924. The district court faulted
Deputy Woida because his brief did not make arguments or
cite authority specific to a failure to intervene. But the defense
brief adequately raised qualified immunity on behalf of both
defendants (as the district court recognized), and at that point
it was Mahajni who faced the burden of overcoming qualified
immunity (Deputy Woida didn't need to affirmatively show
that qualified immunity applied). See *Sinn v. Lemmon*, 911
F.3d 412, 418–19 (7th Cir. 2018).

Deputy Woida is entitled to qualified immunity for a sec-
ond reason—there's no clearly established law that says that
a bailiff who fails to stop someone else from making an im-
proper statement to a juror violates a defendant's rights. The
complaint says that Deputy Woida "stood by without inter-
vening to prevent" Deputy Do from telling a juror that the
vote needed to be unanimous on all counts, that Deputy
Woida knew that his colleague was violating his oath as bail-
iff, and that he failed to tell the court about it. While there are
cases suggesting that a defendant has a right to be free from
direct juror interference, see, e.g., *Remmer v. United States*, 347
U.S. 227, 229 (1954); *United States ex rel. Tobe v. Bensinger*, 492
F.2d 232, 238 (7th Cir. 1974) (same); *Parker v. Gladden*, 385 U.S.
363, 365 (1966) (same), Mahajni has repeatedly failed to iden-
tify any precedent that shows that failing to intervene to stop
someone else from making an improper communication with
a juror violates a clearly established right. Such a case does
not exist, which means that Deputy Woida is entitled to

qualified immunity. See *Ewell v. Toney*, 853 F.3d 911, 918–20 (7th Cir. 2017).

Because qualified immunity protects government officials from both litigation and liability, *Behrens*, 516 U.S. at 305–06, federal courts must resolve immunity questions "at the earliest possible stage in litigation," *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citation modified). The district court didn't do that here, despite a factual record that didn't require further development. Yet because the district court made adequate factual and legal findings, denied Deputy Woida's motion, and the ruling turned only on an abstract legal analysis, the decision was final and our jurisdiction is secure. Having found that defendants raised the issue, and that Mahajni failed to carry his burden in showing that the defense applied, the district court had to grant Deputy Woida's motion. Deputy Woida's part in this case should have been over then. It should be over now. And it should be over quickly on remand.