**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 22-2782

_____

KEVIN LEWIS,
Appellant

v.

NEW JERSEY DEPARTMENT OF CHILDREN AND FAMILIES; THE DIVISION OF
CHILD PROTECTION AND PERMANENCY; CARMEN DIAZ-PETTI, as Director of
DCP&P/Assistant Commissioner of the New Jersey Department of Children and Families
("DCF"); CHRISTINE NORBUT BEYER, as the Commissioner of DCF; JENNIFER
MALLOY, in her individual capacity; ROSEMARY ORTIZ, in her individual capacity;
JASMINE PETERS, in her individual capacity; SHEILA WALDERAMA, in her
individual capacity; CHINUSO AKUNNE, in his individual capacity; BRIAN EIG, in his
individual capacity; STEPHANIE LANASE, in her individual capacity; MELISSA
MCCAUSLAND, in her individual capacity; DR. LEE AND ASSOCIATES;
LAURALIE INGRAM

_____

On Appeal from the United States District Court
For the District of New Jersey
(District Court No. 1-21-cv-01671)
District Judge:  Honorable Noel L. Hillman

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
July 13, 2023

_____

Before:  SHWARTZ, RESTREPO, and CHUNG, *Circuit Judges*

_____

OPINION[*]

_____

**CHUNG**, *Circuit Judge*.

Kevin Lewis sued New Jersey state agencies and employees ("State Defendants"), medical doctors retained by the state ("Doctors"), and his ex-wife, Lauralie Ingram ("Ms. Ingram") (collectively, "Defendants"). He brought claims against the State Defendants and Doctors under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA"), and against Ms. Ingram under New Jersey common law. The District Court dismissed Lewis's claims against all Defendants. For the reasons that follow, we will affirm the order of the District Court.

## I.    BACKGROUND[1]

Lewis's claims arise from the removal of his three children from his custody and the ensuing proceedings related to custody matters. Lewis alleges that on May 17, 2016, the New Jersey Division of Child Protection and Permanency ("DCPP"), a division of the New Jersey Department of Children and Families ("DCF"), removed Lewis's children from his custody, citing safety concerns. Lewis alleges that DCPP then placed his children with Ms. Ingram. Lewis alleges that he was "unable to have any contact with his

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

[1] Because we write for the parties, we recite only facts pertinent to our decision.

children whatsoever" for about ninety days, and that although his "contact with his children was finally restored" in August 2016, he was only given ninety minutes of supervised visitation per week. Appendix ("A") 62–63. Even after Lewis's contact with his children was restored, DCPP abuse-and-neglect proceedings against him (the "State Action") remained ongoing in a Superior Court of New Jersey.

Lewis alleges various instances of wrongdoing by many individuals in connection with the removal of his children and the ensuing custody dispute. Among these, he alleges that DCPP arrived at his home and initiated an investigation "without possessing any substantive evidence." *Id.* at 61. He alleges that DCPP and its employees "continuously attempted to fabricate evidence" and made "false allegations" against him, all while refusing to investigate his own concerns about his children's safety with Ms. Ingram. *Id.* at 62–63. He alleges that DCPP retained medical doctors to perform psychological evaluations of him and his children, and that the doctors "provided fabricated psychological reports" and made "improper diagnos[e]s." *Id.* at 65–66. He further alleges that one of the doctors, Dr. Brian Eig ("Dr. Eig"), "inexplicably recommended" that Ms. Ingram take custody of the children, "despite her admission of substantial risk factors for child abuse." *Id.* at 65. As for Ms. Ingram, he alleges that she made "false allegations of abuse" against him and "coerced and unduly influenced" his children to make false statements to investigators, and that together with a DCPP case worker, she "threatened" the children to make them say that they did not want to live with Lewis. *Id.* at 62–64.

On May 17, 2018—two years to the day after DCPP removed Lewis's children—

3

Lewis filed a complaint in federal court ("2018 Federal Action") against individuals involved in his children's removal and the dispute over their custody. *See* Complaint, *Lewis v. Diaz-Petti*, No. 1-18-cv-09397 (D.N.J. May 17, 2018), ECF No. 1. Defendants included DCPP and DCF employees, medical doctors whom DCPP had retained, and Ms. Ingram. Lewis brought claims against the state employees and doctors under 42 U.S.C. § 1983 and the NJCRA alleging constitutional violations, and a claim against Ms. Ingram under New Jersey common law for malicious abuse of process. The defendants moved to dismiss. On April 25, 2019, the District Court dismissed Lewis's claims without prejudice under the *Younger* abstention doctrine, given that the State Action remained ongoing. Lewis did not move for reconsideration and a stay or move for any other post-judgment relief, nor did he appeal the District Court's dismissal of his complaint.

In September 2019, the State Action concluded.

On February 1, 2021, about sixteen months after the State Action concluded, almost three years after the last wrongful act alleged in the complaint, and over four-and-a-half years after DCPP removed Lewis's children, Lewis filed another complaint in federal court ("2021 Federal Action"). *See* Complaint, *Lewis v. N.J. Dep't Child. & Fams.*, No. 1-21-cv-01671 (D.N.J. Feb. 1, 2021), ECF No. 1. Lewis filed his 2021 Federal Action under a new docket number, paid a new filing fee, and identified his claim as an "Original Proceeding" in his cover sheet, with no "related case(s)." A154. As in his 2018 Federal Action, Lewis sued the State Defendants and Doctors under Section 1983 and the NJCRA for violating his constitutional rights, and Ms. Ingram for malicious abuse of process. In addition to suing these same defendants, Lewis added the state

4

agencies themselves as defendants. Lewis sought somewhat different relief in 2021 than he had in 2018—for example, adding a request for declaratory judgment that the Defendants' actions were unconstitutional, and removing his 2018 request for injunctive relief. However, the actual factual allegations underlying the 2021 complaint were nearly identical to those he asserted in 2018. The most recent allegation of wrongdoing raised by Lewis took place in April 2018, approximately one month before Lewis filed his original complaint and almost three years before he filed his 2021 complaint.

Dr. Eig moved to dismiss, and argued that Lewis failed to state a claim against him. The other Doctors and the State Defendants then moved to dismiss Lewis's claims, among other defenses, as time-barred (or in the case of Dr. Melissa McCausland, who had already answered Lewis's complaint, for judgment on the pleadings).

On January 26, 2022, the District Court granted Dr. Eig's motion to dismiss, finding that Lewis failed to state a claim against Dr. Eig.

In its January 26 order, the District Court also granted the State Defendants' and other Doctors' motions. The Court decided that it "need not look further than the arguments on the statute of limitations," because Lewis had filed his complaint after the two-year statute of limitations expired. *Id.* at 29–30.

Ms. Ingram, the one remaining Defendant, then moved for judgment on the pleadings,[2] arguing that the Court lacked jurisdiction over Lewis's remaining state-law

---

[2] Although Ms. Ingram styled her motion as a motion to dismiss under Rule 12(b), given that Ms. Ingram had already filed her answer, the District Court interpreted it as a motion for judgment on the pleadings under 12(c).

5

claim against her. On August 23, 2022, the District Court granted her motion.

Lewis timely appealed from both the District Court's January 26, 2022 and August 23, 2022 orders.

## II. DISCUSSION[3]

### A. The District Court Correctly Concluded that Lewis's Claims Under Section 1983 and the NJCRA Are Time-Barred

We first address Lewis's appeal from the District Court's January 26, 2022 order dismissing his claims as time-barred.[4]

The District Court correctly determined that a two-year statute of limitations applies to Lewis's Section 1983 and NJCRA claims. The limitations period for a Section

---

[3] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367. We have jurisdiction to review the District Court's dismissal pursuant to 28 U.S.C. § 1291.

Dr. Eig argues that we do not have jurisdiction because the District Court did not specify that its dismissal was with prejudice, and a dismissal without prejudice is not an appealable final judgment. An order granting a defendant's motion to dismiss "operates as an adjudication on the merits" by default, "[u]nless the dismissal order states otherwise." Fed. R. Civ. P. 41(b). Because the District Court did not specify that its order was without prejudice or grant Lewis leave to amend, we treat its order as an adjudication on the merits that is final and appealable. We would also have jurisdiction over Lewis's appeal even if the District Court had intended to dismiss without prejudice, because Lewis appealed without seeking leave to amend and has thus "elected to stand on h[is] original complaint." *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007).

We review the dismissal de novo, accepting all well-pleaded allegations as true and drawing all reasonable inferences in favor of Lewis, the non-moving party. *See Brown v. Card Serv. Ctr.*, 464 F.3d 450, 452 (3d Cir. 2006). We review the District Court's decision to decline to exercise supplemental jurisdiction for abuse of discretion. *Trinity Indus., Inc. v. Chicago Bridge & Iron Co.*, 735 F.3d 131, 135 (3d Cir. 2013).

[4] Dr. Eig filed a separate motion to dismiss (addressed later herein); therefore, the part of the District Court's order ruling that Lewis's claims were time-barred did not affect the claims raised against Dr. Eig.

1983 claim is "governed by the personal injury tort law of the state where the cause of action arose." *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009). New Jersey, where Lewis's claims arose, has a two-year statute of limitations for claims of "injury to the person." N.J. Stat. Ann. § 2A:14-2(a); *see also Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010) ("[A] section 1983 claim arising in New Jersey has a two-year statute of limitations."). New Jersey's two-year statute of limitations for personal-injury claims also applies to claims under the NJCRA. *See Lapolla v. Cnty. of Union*, 157 A.3d 458, 464 (N.J. Super. Ct. App. Div. 2017) ("The statute of limitations for claims under the NJCRA is two years." (citing N.J. Stat. Ann. § 2A:14-2(a))).

The District Court also correctly determined that Lewis filed his 2021 Federal Action more than two years after his causes of action accrued. The accrual date for Section 1983 claims is governed by federal law and begins to run when a "reasonable person should have known" that they had suffered an injury. *Kach*, 589 F.3d at 634. New Jersey follows a similar rule for the statute of limitations applicable to NJCRA claims. *See Caravaggio v. D'Agostini*, 765 A.2d 182, 187 (N.J. 2001) (limitations period of N.J. Stat. Ann. § 2A:14-2 begins to run when, based on a "reasonable person" test, plaintiff "'knew or should have known' of sufficient facts to start the statute of limitations running" (quoting *Baird v. Am. Med. Optics*, 713 A.2d 1019, 1028 (N.J. 1998))). Here, Lewis alleges that DCPP removed his children from his custody in May 2016 and restored them to his custody in August 2016. Although Lewis alleges some incidents occurring later, all of the events giving rise to his claims appear to have occurred by May 2018, when Lewis filed the 2018 Federal Action with essentially the

7

same allegations. When Lewis brought this action in February 2021, it had been almost three years since the last events alleged in his complaint, and over four-and-a-half years since his children were removed from his custody. Thus, no matter the precise date that Lewis's claims accrued, the District Court correctly decided that Lewis filed his complaint well after the two-year statute of limitations had expired.

The fact that Lewis had previously filed his 2018 Federal Action, which the District Court dismissed without prejudice in April 2019, does not change this result. "It is a well recognized principle that a statute of limitations is not tolled by the filing of a complaint subsequently dismissed without prejudice." *Cardio-Med. Assocs., Ltd. v. Crozer-Chester Med. Ctr.*, 721 F.2d 68, 77 (3d Cir. 1983). Instead, for statute-of-limitations purposes, a complaint dismissed without prejudice "is treated as if it never existed." *Id.* Thus, Lewis's 2018 Federal Action has no bearing on the limitations period for his present complaint.[5]

---

[5] Lewis raises two arguments that he did not assert in the District Court. We generally do not consider arguments raised for the first time on appeal. *See Argueta-Orellana v. Att'y Gen.*, 35 F.4th 144, 146 (3d Cir. 2022). We briefly address one here, however. Lewis argues that his 2018 Federal Action should have been stayed and that "[t]he District Court erred in previously dismissing [his 2018 Federal Action] claims based upon the Younger Abstention Doctrine." Lewis Opening Br. 18. But Lewis did not appeal the District Court's dismissal of his 2018 Federal Action and the time to do so has long passed. *See Lui v. Comm'n on Adult Ent. Establishments*, 369 F.3d 319, 325 (3d Cir. 2004) ("We have therefore held that a district court's *Younger* abstention order constitutes a final, appealable order under 28 U.S.C. § 1291"; accordingly, a "*Younger* abstention order becomes immediately appealable"). We thus do not have jurisdiction to review the District Court's decision to dismiss rather than stay Lewis's 2018 Federal Action.

Because Lewis did not file the 2021 Federal Action within the relevant statute of limitations, we will affirm the District Court's order dismissing Lewis's claims against the State Defendants and Doctors as time-barred.

**B.  The District Court Correctly Concluded that Lewis Failed to State a Claim Against Dr. Eig**

We next address Lewis's appeal from the District Court's order dismissing his claims against Dr. Eig.  Lewis names Dr. Eig in Counts Four and Five of his complaint, alleging violations of Section 1983 and the NJCRA, respectively.  The gravamen of Lewis's claims seems to be that Dr. Eig either "deprived" or "caused" Lewis to be deprived of his constitutional rights to substantive and procedural due process and equal protection.  A70–71.[6]

We apply a three-step inquiry when reviewing a motion to dismiss a complaint for failure to state a claim.  *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).  This

---

Although a statute of limitations can be equitably tolled, this requires a showing of both extraordinary circumstances and diligence in pursuing the claim.  *See Robinson v. Dalton*, 107 F.3d 1018, 1023 (3d Cir. 1997) (noting that equitable tolling is "a remedy available only sparingly and in extraordinary situations," and that to benefit from equitable tolling, a plaintiff must "exercise due diligence to preserve his or her claim").  Lewis has failed to either present any extraordinary circumstances that would have prevented him from asserting his rights sooner, or show that he exercised diligence in asserting his claim, given that he waited until two years after his children were removed to file his 2018 complaint, and after the State Action had concluded, he waited sixteen additional months to file his 2021 complaint.

[6] As the District Court noted, Lewis also lists violations of the First and Fourth Amendments and invokes several other constitutional concepts, including cruel and unusual punishment, and privileges and/or immunities.  On appeal, Lewis does not argue that Dr. Eig contributed to violating any of these rights.

9

inquiry involves (1) "identifying the elements of the claim," (2) "reviewing the complaint to strike conclusory allegations," and (3) "looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Id.* The District Court properly followed this three-step inquiry, identifying the elements of the constitutional claims raised by Lewis, striking conclusory allegations, and evaluating the remaining portions of the complaint.

We begin our review with Lewis's claim for substantive due process. While the complaint cites case law addressing a parent's constitutionally protected interest in the custody of his children, it fails to adequately allege how Dr. Eig violated that right in contravention of Section 1983 and the NJCRA. For instance, Lewis alleges without any factual support that Dr. Eig "fabricated a false psychological evaluation of [Lewis] with an improper diagnosis" as evidence against him. A65. Lewis further alleges, essentially, that Dr. Eig improperly weighed the information before him by "inexplicably recommend[ing]" that Lewis's children be placed with Ms. Ingram. *Id.* Most importantly, Lewis does not allege how Dr. Eig's evaluation, diagnosis, or recommendation influenced the ultimate custody decision, if at all, and how Dr. Eig's actions were related to a deprivation of his rights.

We find that these bald and conclusory allegations are so "threadbare … that they fail to cross the line between the conclusory and the factual," *Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 328 (3d Cir. 2022) (quoting *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016)); accordingly, they cannot be presumed true at the pleading stage, *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). Even if they were not

10

conclusory assertions, they provide no information from which we can conclude that discovery will reveal anything that was actually improper about Dr. Eig's work, let alone at a level that "shocks the conscience."[7] *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (claim for substantive due process must allege, among other things, an abuse of power that "shocks the conscience.").

Lewis's other claims fall even farther from the mark. To state a claim for a violation of his procedural due process rights, Lewis must allege that "the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)). Yet Lewis does not allege what procedures were deficient and how (*e.g.*, he does not allege that he was not afforded an opportunity to respond or be heard), nor does he connect these deficiencies to Dr. Eig. Finally, to adequately state an equal protection claim, Lewis has "the burden of proving 'the existence of purposeful discrimination.'" *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987) (quoting *Whitus v. Georgia*, 385 545, 550 (1967)). Lewis makes no allegation that Dr. Eig discriminated against him, however.

Lewis argues that the "District Court failed to acknowledge [his] specific allegations [against Dr. Eig] of conspiracy to fabricate evidence … and failed to cite them in its Opinion." Lewis Opening Br. 13. But it is unclear what allegations Lewis contends

---

[7] Moreover, Lewis alleges that his children were removed from his custody for "approximately ninety[ ]days," A62, and we have "never found a substantive due process violation when state agencies temporarily remove a child, whatever the circumstances of the removal," *Mammaro v. N.J. Div. Child Prot. & Permanency*, 814 F.3d 164, 170 (3d Cir. 2016).

the District Court did not acknowledge or cite.  After arguing that the District Court did not address his allegations, Lewis simply quotes several paragraphs from his complaint verbatim.  *Id.* at 13–14 (quoting A88–89) (alleging that Dr. Eig "fabricated" his evaluation, gave an "improper diagnosis," and "inexplicably recommended" that Lewis's children be placed with Ms. Ingram).  But the District Court's opinion reflects that it considered each of these allegations, and to the extent Lewis is arguing on appeal that the District Court failed to acknowledge his allegations of "conspiracy," the District Court also did not err.  Lewis's complaint never alleges that Dr. Eig was involved in a conspiracy, and Lewis bases neither of his Counts against Dr. Eig on a claim that Dr. Eig conspired against him.

In summary, in considering the elements of the claims against Dr. Eig, striking conclusory allegations, and looking at the remainder of the complaint, *Malleus*, 641 F.3d at 563, the District Court correctly concluded that each claim's elements were not sufficiently alleged.  Accordingly, the District Court properly dismissed Counts Four and Five as failing to state a claim against Dr. Eig.

### C.   The District Court Did Not Abuse Its Discretion in Declining to Exercise Supplemental Jurisdiction over Lewis's Claim Against Ms. Ingram

In its January 26, 2022 Order, the District Court dismissed Lewis's federal-law claims.  The District Court then granted Ms. Ingram's motion to dismiss, declining to

exercise supplemental jurisdiction over Lewis's claim against her at Count Six. We conclude that this decision was not an abuse of discretion.

The supplemental-jurisdiction statute provides that a "district court[ ] may decline to exercise supplemental jurisdiction over" a claim when, as relevant here, it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). In such cases, the district court's "decision to retain or decline jurisdiction over state-law claims is discretionary." *Kach*, 589 F.3d at 650. The district court's discretionary decision "should be based on considerations of 'judicial economy, convenience and fairness to the litigants.'" *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1505 (3d Cir. 1996) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726–27 (1966)).

The District Court invoked 28 U.S.C. § 1367(c)(3) and declined to exercise supplemental jurisdiction after dismissing all federal-law claims. Lewis does not argue, and we do not conclude, that considerations of "judicial economy," "convenience," or "fairness" weighed in favor of retaining jurisdiction. *New Rock Asset Partners*, 101 F.3d at 1505. Thus, we find that the District Court did not abuse its discretion in dismissing Lewis's claim against Ms. Ingram.

III.    CONCLUSION

For the foregoing reasons, we will affirm the District Court's order.